**Slip Op. 16–121**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **CHANGZHOU TRINA SOLAR ENERGY CO., LTD. ET AL.,**<br><br>    **Plaintiffs and Consolidated Plaintiff,**<br><br>**and**<br><br>**YINGLI GREEN ENERGY AMERICAS, INC. ET AL.,**<br><br>    **Plaintiff-Intervenors,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>    **Defendant,**<br><br>**and**<br><br>**SOLARWORLD AMERICAS, INC.,**<br><br>    **Defendant-Intervenor and Consolidated Defendant-Intervenors.** | **Before Claire R. Kelly, Judge**<br><br>**Consol. Court No. 15-00068** |

**<u>OPINION AND ORDER</u>**

[Sustaining in part and remanding in part the Department of Commerce's countervailing duty determination.]

Dated: December 30, 2016

<u>Mark P. Lunn</u> and <u>Eugene Degnan</u>, Dentons US LLP, of Washington, DC, for Changzhou Trina Solar Energy Co., Ltd. and Trina Solar (Changzhou) Science & Technology Co., Ltd.

Neil R. Ellis, Richard L.A. Weiner, Brenda Ann Jacobs, and Rajib Pal, Sidley Austin LLP, of Washington, DC, for Yingli Green Energy Holding Co., Ltd., Yingli Green Energy Americas, Inc., and Canadian Solar Inc.

Timothy C. Brightbill and Laura El-Sabaawi, Wiley Rein LLP, of Washington, DC, for SolarWorld Americas, Inc.

Justin Reinhart Miller, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for the Defendant.  On the brief were Melissa Marion Devine, Trial Attorney, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC.  Of counsel was Shelby Mitchell Anderson, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Kelly, Judge: This consolidated action arises from the final affirmative determination made by the U.S. Department of Commerce ("Commerce" or "DOC") in its countervailing duty ("CVD") investigation of certain solar panels from the People's Republic of China ("PRC" or "China").[1]  See Certain Crystalline Silicon Photovoltaic Products from the [PRC], 79 Fed. Reg. 76,962 (Dep't Commerce Dec. 23, 2014) (final affirmative countervailing duty determination) ("Final Determination") and accompanying Issues & Decision Mem., C-570-011, Investigation, PD 388, bar code 3247469-01 (Dec. 15, 2014) ("Final Decision Memo").  Before the court are motions for judgment on the agency record.  Specifically, Plaintiffs Changzhou Trina Solar Energy Co., Ltd., Trina Solar (Changzhou) Science & Technology Co., Ltd., Yingli Green Energy Holding Co., Ltd., Yingli Green Energy Americas, Inc., and Canadian Solar Inc. (collectively "Trina Solar" or "the Respondents")  challenge Commerce's determinations to include certain

---

[1] This case was originally assigned to Judge Donald C. Pogue who heard oral argument on August 31, 2016. Pursuant to USCIT Rule 77(e)(4) and 28 U.S.C. § 253(c), the case was reassigned to Judge Claire R. Kelly on November 18, 2016 following Judge Pogue's death. Judge Kelly has reviewed the record, the filings of the parties, and has listened to the oral argument.

grants or programs of the Government of China ("GOC") as countervailable subsidies in

the calculation of Respondents' CVD cash deposit rates, and its application of adverse

facts available[2] ("AFA").[3]  <u>See</u> Pl.'s Mem. of L. in Supp. of Mot. for J. on the Agency R.,

Jan. 19, 2016, ECF No. 51 ("Trina Solar's Br."); Mot. of Pl.-Intervenors Yingli Green

Energy Holding Co., Ltd. & Yingli Green Energy Americas, Inc. for J. on the Agency R. 2,

Jan. 19, 2016, ECF No. 44 (adopting the arguments presented in Trina Solar's Br.); Mot.

of Consol. Pl.-Intervenor Canadian Solar Inc. for J. on the Agency R. 2, Jan. 19, 2016,

ECF No. 45 (same).  In addition, Plaintiff SolarWorld Americas, Inc. ("SolarWorld"), the

domestic industry petitioner, challenges the reasonableness of Commerce's use of

certain benchmark prices, as well as Commerce's decision not to investigate SolarWorld's

allegations regarding Respondents' creditworthiness.  SolarWorld's Mot. for J. on the

Agency R., Jan. 20, 2016, ECF Nos. 52 (conf. version) & 53 (pub. version) ("SolarWorld's

Br.").

---

[2] Although 19 U.S.C. § 1677e(a)–(b) and 19 C.F.R. § 351.308(a)–(c) each separately provide for the use of facts otherwise available and the subsequent application of adverse inferences to those facts, Commerce uses the shorthand term "adverse facts available" or "AFA" to refer to its use of such facts otherwise available with an adverse inference.  <u>See, e.g.</u>, <u>Final Determination</u>, 79 Fed. Reg. at 76,964; Final Decision Memo at 9–17.

[3] Trina Solar was an individually-investigated ("mandatory") respondent, <u>Final Determination</u>, 79 Fed. Reg. at 76,963, whereas the other respondent Plaintiffs received the "all others" rate.  <u>Final Determination</u>, 79 Fed. Reg. at 76,964.  Because the "all others" rate was calculated by averaging the subsidy rates of the two mandatory respondents, <u>id.</u>, a change to Trina Solar's rate would result in a correlative change to the "all others" rate for the other respondent Plaintiffs, who have adopted Trina Solar's arguments in this action and present no separate arguments of their own.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012), and 19 U.S.C.

§ 1516a(a).[4]  "The court shall hold unlawful any determination, finding, or conclusion

found . . . to be unsupported by substantial evidence on the record, or otherwise not in

accordance with law . . . ."  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I. Governmental Programs and Grants In Addition to Those Alleged In the Petition

First, the Respondents challenge Commerce's decision to include in the

calculation of Trina Solar's rate certain subsidies that were not alleged in SolarWorld's

petition to initiate this proceeding, but that Commerce examined on its own initiative.

Trina Solar's Br. 9–24.  These additional subsidies fall into two categories: (i) forty

governmental assistance programs that were examined in the related CVD investigation

of solar cells from the PRC[5] (the "Solar I PRC programs"), see Final Decision Memo at

---

[4] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

[5] Solar panels from the PRC were first subject to investigation in a prior CVD proceeding, also initiated pursuant to a petition from SolarWorld, which resulted in a separate CVD order covering panels assembled (anywhere, including the PRC) from solar cells that were manufactured in the PRC (the "Solar I PRC" proceeding).  See Issues & Decision Mem., Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the [PRC], C-570-980, Investigation (Oct. 9, 2012) (adopted in 77 Fed. Reg. 63,788 (Dep't Commerce Oct. 17, 2012) (final affirmative countervailing duty determination and final affirmative critical circumstances determination)) ("Solar I PRC CVD Final Decision Memo").  The CVD investigation at issue here ("Solar II PRC") covers solely solar panels assembled in the PRC from solar cells that were not manufactured in the PRC.  See SunPower Corp. v. United States, 40 CIT __, Slip Op. 16-56, (June 8, 2016) ("Solar II PRC scope opinion") (adjudicating challenges to Commerce's final scope determination in the same proceeding that is now also at issue here).  Background regarding the relationship between the Solar II PRC CVD proceeding at issue here and the Solar I PRC CVD proceeding is provided in the court's Solar II PRC scope opinion, Slip Op. 16-56, Background Sections I & II.

84–85,[6] and (ii) twenty-eight additional governmental grants and a tax deduction that were

discovered in the course of the agency's verification procedure in China (the "verification

grants and tax deduction"), see Final Decision Memo at 86–88.  Respondents challenge

Commerce's determinations with respect to both the Solar I PRC programs and the

verification grants and tax deduction.  Trina Solar's Br. 9–24.  Specifically, Trina Solar

argues that (1) Commerce improperly determined to investigate the Solar I PRC programs

and the verification grants and tax deduction in this proceeding, Trina Solar's Br. 9–19;

(2) in the alternative, that Commerce's use of AFA, pursuant to 19 U.S.C. § 1677e(b),

---

[6] Commerce refers to these programs as "numerous additional grants" that the mandatory Respondents "reported . . . in addition to those alleged in the petition."  Final Decision Memo at 84 (citing Decision Mem. for Prelim. Affirmative [CVD] Determination, Certain Crystalline Photovoltaic Products from the [PRC], C-570-011, Investigation at 24, PD 267, bar code 3206936-01 (June 2, 2014) (adopted in 79 Fed. Reg. 33,174 (Dep't Commerce June 10, 2014) (preliminary determination)) ("Prelim. Decision Memo")); Prelim. Decision Memo at 24 (citing First Supplemental Questionnaire Resp. [of Trina Solar], Certain Crystalline Silicon Photovoltaic Products from the [PRC], C-570-011, Investigation (May 14, 2014) ("Trina Solar Suppl. Resp."), reproduced in App. to Pl. [Trina Solar]'s Mem. of L. in Supp. of Mot. for J. on the Agency R. ("Trina Solar's App."), ECF Nos. 57-2, 57-3, & 57-4 at Tab 12, at Exs. 1–7) (additional citation to the other mandatory respondent's submission omitted).  These programs were first reported in response to Commerce's April 28, 2014, supplemental questionnaire, where Commerce requested information regarding "certain additional grants that were uncovered during the course of [the related CVD investigation of solar cells from the PRC]."  Trina Solar Suppl. Resp., ECF No. 57-2 at Tab 12, at 2–4 & Exs. 1–7 (reproducing and responding to [Commerce's] Suppl. Questionnaire, Certain Crystalline Silicon Photovoltaic Products from the [PRC], C-570-011, Investigation (Apr. 28, 2014), reproduced in Trina Solar's App., ECF No. 57-1 at Tab 8 ("DOC Suppl. Questionnaire") at Attach. ¶ 2); see DOC Suppl. Questionnaire, ECF No. 57-1 at Tab 8, at Attach. ¶ 2 ("Other Subsidies") ("Information from the countervailing duty investigation on crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China, indicates that Trina Solar received certain additional grants that were uncovered during the course of that investigation.  For each of [these programs], please complete the questions in the Standard Questions Appendix, Allocation Appendix, and Grant Appendix as indicated in the Department's February 28, 2014 initial questionnaire.") (citing "the public version of the October 9, 2012 memorandum, 'Final Analysis Regarding the Countervailing Duty Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China; Calculations for Changzhou Trina Solar Energy Co., Ltd.,' at Attachment II, 'Discovered Grants'").  See also Trina Solar's Br. 3–4 (discussing the Solar I PRC programs); Def.'s Resp. Mots. J. Admin. R. 26–27, Apr. 21, 2016, ECF No. 66 (same) (citing Solar I PRC CVD Final Decision Memo at 66–68).

with respect to the <u>Solar I PRC</u> programs and verification grants and tax deduction was contrary to law, <u>see</u> <u>id.</u> at 16–17, 20–23; (3) in another alternative, that Commerce's application of 19 U.S.C. § 1677e(b) to conclude that all of the <u>Solar I PRC</u> programs, verification grants, and tax deduction were countervailable subsidies was not supported by substantial evidence, <u>see</u> <u>id.</u> at 15, 19–20, 21, 22–23; and (4) in the final alternative, that Commerce's selection of AFA rates for the verification grants and tax deduction was unexplained and arbitrary, <u>see</u> <u>id.</u> at 23–24.  The court sustains Commerce's inclusion of both categories of subsidies, as well as its decision to apply AFA, but remands to Commerce its use of AFA to determine the countervailability of the <u>Solar I PRC</u> programs and the additional grants and tax deduction found during verification.[7]

### A. Investigation of the <u>Solar I PRC</u> Programs and the Additional Grants and Tax Deduction Found at Verification

The statute provides two separate bases for Commerce's investigative authority in CVD proceedings.  Commerce must investigate "whether the elements necessary for the imposition of a [countervailing] duty under [19 U.S.C. § 1671(a)] exist" when the agency receives a timely petition alleging all necessary elements and providing supporting evidence reasonably available to the petitioner.  19 U.S.C. §§ 1671a(a), 1671a(b)(1).  Commerce may also investigate any "practice which appears to be a countervailable subsidy [of the subject merchandise]" that is "discover[ed]" in the course of a CVD proceeding, <u>id.</u> at § 1677d(1), if the agency "concludes that sufficient time remains before the scheduled date for the final determination."  19 C.F.R. § 351.311(b) (2014).  Moreover,

---

[7] The court accordingly does not at this time reach the issue of Commerce's selection of AFA rates for the verification grants and tax deduction.

the statute provides a broad directive to Commerce to investigate whenever the agency deems that a formal investigation is warranted.  19 U.S.C. § 1671a(a).

Here, Commerce determined to investigate both the Solar I PRC programs and the additional grants and tax deduction found at verification as discovered apparent subsidies, pursuant to 19 U.S.C. § 1677d.  Final Decision Memo at 16–19, 85; Decision Mem. for Prelim. Affirmative [CVD] Determination, Certain Crystalline Photovoltaic Products from the [PRC], C-570-011, Investigation at 24, PD 267, bar code 3206936-01 (June 2, 2014) (adopted in 79 Fed. Reg. 33,174 (Dep't Commerce June 10, 2014) (preliminary determination)) ("Prelim. Decision Memo").   Trina Solar claims that the agency's actions "unlawfully circumvented the initiation requirements," Trina Solar's Br. 14; see also id. at 9 ("Because these 'discovered grants' were not alleged in the petition giving rise to the instant investigation . . ., Commerce's final determination that these [programs] were countervailable is contrary to [law]."); id. at 9–10 (discussing statutory requirements for Commerce's CVD investigation of petition-based allegations) (relying on 19 U.S.C. §§ 1671a(b)(1) & (c)), but both the statute, 19 U.S.C. § 1677d, and Commerce's regulations, 19 C.F.R. § 351.311, specifically contemplate Commerce's independent investigation of discovered practices.[8]

---

[8] Trina Solar also claims that Commerce acted contrary to the World Trade Organization ("WTO")'s Agreement on Subsidies and Countervailing Measures ("SCM Agreement").   Trina Solar's Br. 7, 9–10.  First, the agency action here was one pursuant to U.S. statute, 19 U.S.C. § 1677d, which provides authority that is independent from the WTO Agreements.  See, e.g., Andaman Seafood Co. v. United States, 34 CIT 129, 675 F. Supp. 2d 1363, 1369–74 (2010) (discussing and providing relevant authorities for the independence of U.S. law from WTO law).  In any event, Trina Solar's argument that Commerce acted contrary to Article 11.2 of the SCM Agreement is also inappositely based on requirements for petition-based CVD investigations.  Article 11.2 of the SCM Agreement provides the evidentiary requirements for "[a]n application under            paragraph            1,"            SCM            Agreement,            available            at

At oral argument, counsel for Trina Solar clarified that the Respondents are not challenging Commerce's authority to investigate governmental assistance beyond the allegations made in the petition, but are arguing that Commerce improperly invoked 19 U.S.C. § 1677d here to examine the <u>Solar I PRC</u> programs and the verification grants and tax deduction.  <u>See</u> Oral Arg. Tr. 3–6, Sept. 22, 2016, ECF No. 93 ("Oral Arg. Tr."). Specifically, Trina Solar argues that 19 U.S.C. § 1677d is "not applicable" to the <u>Solar I PRC</u> programs, because these programs "were not discovered in the course of this proceeding, but rather were found in [the <u>Solar I PRC</u> proceeding]."  Trina Solar's Br. 13; <u>see</u> Oral Arg. Tr. 12.  With respect to the additional grants and tax deduction found at verification, Trina Solar argues that Commerce unlawfully failed to make the prerequisite threshold determination that these grants "'appear[ed]' to be [] countervailable

_____

https://www.wto.org/english/docs_e/legal_e/24-scm.pdf (last visited December 27, 2016), at Art. 11.2 – <u>i.e.</u>, "a written application by or on behalf of the domestic industry," <u>id.</u> at Art. 11.1 ("Except as provided in paragraph 6, an investigation to determine the existence, degree and effect of any alleged subsidy shall be initiated upon a written application by or on behalf of the domestic industry.").  The issue here, however, does not concern an investigation of subsidies alleged in a written application by or on behalf of the domestic industry.  Rather, at issue is Commerce's determination to investigate certain potential subsidies on its own authority to do so. Paragraph 6 of Article 11 of the SCM Agreement provides that if the agency "decide[s] to initiate an investigation without having received a written application by or on behalf of a domestic industry," then it must proceed only on the basis of sufficient evidence.  <u>Id.</u> at Art. 11.6.  This correlates with the statutory requirement that, when Commerce self-initiates an investigation of apparent subsidies beyond those that are specifically alleged in the petition, the agency's determinations must be supported by substantial evidence, including any appropriate inferences that follow from the record evidence.  <u>See</u> 19 U.S.C. § 1677d (permitting Commerce to self-initiate investigations of apparent subsidies beyond those that are specifically alleged in a petition from the domestic industry); <u>id.</u> at § 1516a(b)(1)(B)(i) (requiring that Commerce's factual determinations be supported by substantial evidence).  Similarly, because Commerce did not rely on its petition-based investigative authority under 19 U.S.C. § 1671a(b), and instead exercised its separate authority under 19 U.S.C. § 1677d, to examine discovered practices that appear to be countervailable subsidies, those of Trina Solar's arguments that are based on Section 1671a(b)'s requirements for a petition-based investigation are inapposite.  <u>See, e.g.</u>, Trina Solar's Br. 9–10, 17 (quoting 19 U.S.C. § 1671a(b)(1) ("Procedures for initiating a [CVD] investigation: Initiation by petition: Petition requirements")).

subsid[ies]," 19 U.S.C. § 1677d, before including them in this proceeding.  Trina Solar's Br. 16; <u>see</u> Oral Arg. Tr. 6–7.

### 1.  19 U.S.C. § 1677d and the <u>Solar I PRC</u> Programs

Section 1677d contains no limiting language as to how the agency is to "discover" the apparent subsidies in the course of a proceeding before including them in its investigation.  <u>See</u> 19 U.S.C. § 1677d.  Here, because the <u>Solar I PRC</u> CVD proceeding is intimately related with this <u>Solar II PRC</u> CVD proceeding, <u>see</u> <u>SunPower Corp. v. United States</u>, 40 CIT __, Slip Op. 16-56 (June 8, 2016), at Background Sections I & II, Commerce reasonably determined the <u>Solar I PRC</u> programs to be sufficiently related to the subject merchandise to warrant further inquiry pursuant to 19 U.S.C. § 1677d.

Trina Solar argues that, because <u>Solar I PRC</u> involved the same petitioner as this <u>Solar II PRC</u> proceeding, the <u>Solar I PRC</u> programs were "known to the Petitioner," such that "Petitioner had the burden of alleging them in the petition for a proper initiation on their merits pursuant to the requirements of 19 U.S.C. § 1671a(b) and (c) of the statute." Trina Solar's Br. 14; <u>see</u> Oral Arg. Tr. 12.  But nowhere does the statute contemplate that the Petitioner's failure to include all known potential subsidies in its petition thereby waives Commerce's own, independent authority to investigate such programs, and Trina Solar cannot point to any statutory provision that suggests otherwise.  <u>See</u> Oral Arg. Tr. 13.

Accordingly, because Commerce's inquiry in this proceeding regarding the <u>Solar I PRC</u> programs was not an unreasonable use of the agency's independent authority, pursuant to 19 U.S.C. § 1677d, to examine additional subsidization in the production of subject merchandise, Commerce properly determined to examine in this proceeding

whether the elements for the imposition of a CVD duty were satisfied with respect to the

Solar I PRC programs, as applied to the subject merchandise.

### 2. 19 U.S.C. § 1677d, 19 C.F.R. § 351.311, and the Additional Grants and Tax Deduction Found During Verification

Trina Solar next argues that Commerce unlawfully failed to make the threshold

determination that the additional grants and tax deduction found at verification

"appear[ed] to be [] countervailable subsid[ies]," 19 U.S.C. § 1677d, before including them

in its investigation.  Trina Solar's Br. 14–16; see Oral Arg. Tr. 7.  Trina Solar relies heavily

on this Court's opinion in Allegheny Ludlum Corp. v. United States, 25 CIT 816 (2001)

(not reported in the Federal Supplement).  Trina Solar's Br. 14 (citing Allegheny Ludlum,

25 CIT at 825).  But because the issue here is not whether Commerce was required to

examine these additional programs pursuant to a petitioner's request that the agency

invoke 19 U.S.C. § 1677d, cf. Allegheny Ludlum, 25 CIT at 824 (holding that "[a]lthough

§ 1677d offers a petitioner the opportunity to call Commerce's attention to a potentially

countervailable subsidy that was discovered during the course of an ongoing

countervailing duty investigation, it does not force Commerce to fully investigate any

subsidy"), but rather whether Commerce reasonably exercised its own independent

investigative authority, Allegheny Ludlum is not controlling.  See id. at 822 ("Both the

controlling statute and its implementing regulation are silent as to the level of inquiry

required to determine whether the term 'appears' [in 19 U.S.C. § 1677d] is satisfied.").

Here, during the verification of Trina Solar's accounts, Commerce officials came

across a number of entries for unreported government grants received during the POI

(listed in accounts specifically reserved for government grants, see  Verification of the

Questionnaire Resps. Submitted by [Trina Solar] & its Cross-Owned Companies (Oct. 2,

2014), reproduced in Trina Solar's App. Tab 17, Jan. 26, 2016, ECF No. 57-5 ("Trina

Solar VR") at 7; Oral Arg. Tr. 23), as well as an unreported POI tax deduction.  Trina Solar

VR at 7 (citing Ex. 18 to Trina Solar VR ("Results of System Query") (not reproduced in

the parties' appendices)); Final Decision Memo at 16.  Given the nature of these entries

as self-described government grants, Commerce reasonably determined that this

additional governmental assistance constituted "apparent subsidies [with respect to the

subject merchandise] that were discovered during verification," Final Decision Memo at

17, and therefore included them in its investigation.  See id.; 19 U.S.C. § 1677d(1).  This

determination is not equivalent to a legal conclusion that the elements necessary for the

imposition of a CVD duty with respect to these grants and tax deduction were met, but is

simply the threshold determination that further investigation was warranted.  See 19

U.S.C. § 1671a(a) (in CVD proceedings, Commerce investigates "whether the elements

necessary for the imposition of a duty under section 1671(a) of this title exist" with respect

to the governmental aid programs under investigation).  Under 19 U.S.C. § 1677d(1),

nothing more is required.  Accordingly, Commerce properly determined to examine in this

proceeding whether the additional grants and tax deduction found at verification satisfy

the elements for the imposition of a CVD duty with respect to the subject merchandise.

Trina Solar further argues that Commerce's decision to investigate the verification

grants and tax deduction was contrary to 19 C.F.R. § 351.311(b) because Commerce

unreasonably determined that "sufficient time remain[ed]" to investigate these subsidies.

Trina Solar's Br. 12–13, 17–19.[9]  However, the statute and regulations grant Commerce

---

[9] Trina Solar also relies on this Court's opinion regarding the Solar I PRC CVD investigation,

(footnote continued)

substantial discretion to determine how best to allocate its resources.  See 19 U.S.C. § 1677d (providing procedures for Commerce to follow if Commerce "discovers" an apparent countervailable subsidy); 19 C.F.R. § 351.311(b) (leaving it to Commerce to determine whether there is sufficient time to investigate a discovered subsidy); see also Torrington Co. v. United States, 68 F.3d 1347, 1351 (Fed. Cir. 1995) ("[A]gencies with statutory enforcement responsibilities enjoy broad discretion in allocating investigative and enforcement resources."); Longkou Haimeng Mach. Co. v. United States, 32 CIT 1142, 1151, 581 F. Supp. 2d 1344, 1353 (2008) ("[A]ny assessment of Commerce's operational capabilities or deadline rendering must be made by the agency itself.").  To conclude, as Trina Solar suggests, that Commerce may never investigate subsidies discovered during the verification process, see Trina Solar's Br. 17–19,[10] would arbitrarily restrict Commerce's authority under 19 U.S.C. § 1677d to investigate apparent subsidies discovered "in the course of a [CVD] proceeding."

Accordingly, because Commerce reasonably exercised its authority under 19 U.S.C. § 1677d and 19 C.F.R. § 351.311 to consider whether the Solar I PRC programs and the verification grants and tax deduction were countervailable subsidies

---

SolarWorld Am. v. United States, 39 CIT __, Slip Op. 15-137 (Dec. 11, 2015).  Trina Solar's Br. 12–13.  But in that case, as in Allegheny Ludlum, Commerce chose not to invoke its self-initiating investigative authority under 19 U.S.C. § 1677d.  Instead, Commerce found that the petitioner's repeated applications for petition-based investigations pursuant to 19 U.S.C. § 1671a(b)(1) had ultimately lacked adequate evidentiary support.  The agency then concluded that insufficient time remained in that already complex proceeding to devote more resources to these allegations, and invited the petitioner to resubmit its allegations, with adequate evidentiary support, in the next administrative review.    SolarWorld Am., 39 CIT __, Slip Op. 15-137, at 28–34 (Discussion Section II.A).

[10] See also Final Decision Memo at 83 (noting that Trina Solar argued at the administrative level that, "[b]ecause the deadline for the submission of factual information [had] passed [when Commerce determined to examine these additional grants after discovering them at verification], there [was] insufficient time to examine these grants").

that should be included in the calculation of subsidy rates in this proceeding, the agency's

determinations to include these programs and grants in this investigation are sustained.

### B. Application of AFA to the <u>Solar I PRC</u> Programs and the Additional Grants and Tax Deduction Found During Verification

Commerce determined that the use of AFA was warranted with regard to the <u>Solar I</u>

<u>PRC</u> programs and verification grants and tax deduction because the GOC failed to

cooperate by withholding the information requested regarding the <u>Solar I PRC</u> programs,

and because Trina Solar had failed to report the additional grants and tax deduction found

at verification.   Final Decision Memo at 84–87. The adverse inferences were based on

determinations that the GOC and Trina Solar had failed to cooperate with Commerce's

request for information regarding "any other forms of assistance" provided by "the GOC

(or entities owned directly, in whole or in part, by the GOC or any provincial or local

government)" – during the POI – to producers of subject merchandise.   <u>Id.</u>; DOC Initial

Questionnaire, ECF No. 57-1 at Tab 5 & 71-4 at Tab 4, at II-19 and III-18.[11]   More

specifically, in its initial questionnaire, sent to the mandatory respondents and to the GOC,

Commerce requested information regarding "any other forms of [governmental]

assistance" that the respondent companies received during the POI, beyond those

---

[11] <u>See</u> Countervailing Duty Questionnaire, Certain Crystalline Silicon Photovoltaic Products from the [PRC], C-570-011, Investigation (Feb. 28, 2014) ("DOC Initial Questionnaire"), <u>reproduced in</u> [Pub.] App. of Docs. Supp. Def.'s Resp. to Mots. for J. Upon the Agency R., Apr. 22, 2016, ECF No. 71-4 at Tab 4, and Trina Solar's App., Jan. 26, 2016, ECF No. 57-1 at Tab 5, at III-18. Although neither the Defendant's appendix nor Trina Solar's appendix includes page III-18 of the questionnaire, both omitting Section III (Questionnaire for Producers/Exporters of Subject Merchandise) entirely, the parties' appendices include page II-19, from Section II (Questionnaire for the [GOC]), which asked whether "the GOC (or entities owned directly, in whole or in part, by the GOC or any provincial or local government) provide[d], directly or indirectly, any other forms of assistance to producers or exporters of solar cells and panels," and requested that the GOC "coordinate with the respondent companies to determine if they are reporting usage of any subsidy program(s)," DOC Initial Questionnaire, ECF Nos. 57-1 at Tab 5 & 71-4 at Tab 4, at II-19.  There is no dispute that the inquiry to the producers, in Section III of the questionnaire, was substantively identical to the inquiry to the GOC in Section II.  <u>See</u> Oral Arg. Tr. 19–20.

alleged subsidies that were specifically discussed in the petition to initiate this proceeding.

See Final Decision Memo at 17.  Both the GOC and Trina Solar responded that, in the

absence of "allegations and sufficient evidence," consistent with Article 11.2 and "other

relevant articles" of the World Trade Organization ("WTO")'s Agreement on Subsidies and

Countervailing Measures, no reply was required to Commerce's request for information

regarding additional forms of governmental assistance beyond those alleged in the

petition, and so refused to provide any further information in response to this request.

See Final Decision Memo at 16.[12]

Commerce then sent a supplemental questionnaire specifically questioning the

GOC and the Respondents about the Solar I PRC programs.  DOC Suppl. Questionnaire,

ECF No. 57-1 at Tab 8, at Attach. ¶ 2; see Final Decision Memo at 16.  While the GOC

continued to categorically refuse to provide any information regarding any programs that

were not specifically alleged in the petition, Trina Solar agreed to provide information

regarding the Solar I PRC programs "out of an abundance of caution."  Trina Solar Suppl.

Resp., ECF No. 57-2 at Tab 12, at 4, Exs. 1–7.

In addition, during the verification procedure in China, Commerce reviewed Trina

Solar's accounts "for any indication that the company received unreported [governmental]

assistance."   Final Decision Memo at 16.   Commerce discovered "accounts for

government grants" containing entries for twenty-eight additional grants received during

the POI that were not reported by Trina Solar, id. at 86; see also Trina Solar VR at 7, as

---

[12] Resp. of the [GOC] to the U.S. Dep't of Commerce's Questionnaire, Certain Crystalline Silicon Photovoltaic Products from the [PRC], C-570-011, Investigation (Apr. 21, 2014) ("GOC Resp."), reproduced in Trina Solar's App., ECF No. 57-1 at Tab 6, at 222; Questionnaire Resp. to Sec. III of [Trina Solar], Certain Crystalline Silicon Photovoltaic Products from the [PRC], C-570-011, Investigation (Apr. 21, 2014), reproduced in Trina Solar's App., ECF No. 57-1 at Tab 7, at 67.

well as an unreported tax deduction for "[w]ages paid for placement of disabled persons,"

Trina Solar VR at 6.  When asked about these unreported grants and tax deduction,

"counsel for Trina Solar stated that the company reported all of the assistance for which

it was asked, and offered to provide additional information on the purpose for these grants

and how Trina Solar qualified for them."  Id. at 7.  Because the deadline for submission

of new factual information had passed, Commerce declined to accept any additional

information with respect to the twenty-eight unreported grants.  Id.  With respect to the

unreported tax deduction for disabled employees, however, Commerce requested

"information that shows the eligibility criteria for this deduction," and was provided with

documentation "indicat[ing] that enterprises that employ disabled persons are eligible to

deduct 100 percent of the wages paid to disabled employees when calculating the amount

of their taxable income on the basis of the deduction that is made in accordance with the

actual wages that were paid to the disabled employee."  Id. at 6 (citing Ex. 16 ("Fund for

the Disabled Person")).  Because Trina Solar had failed to report these additional

government grants and tax deduction in response to Commerce's request for information

regarding "any other forms of [governmental] assistance," Final Decision Memo at 17

(quoting DOC Initial Questionnaire, ECF No. 71-4 at Tab 4), Commerce concluded that

the use of facts otherwise available, with an inference adverse to Trina Solar, was

warranted "in determining the countervailability of these apparent subsidies that were

discovered during verification."  Final Decision Memo at 17; see 19 U.S.C. § 1677e.

Trina Solar argues that Commerce's inquiry regarding any forms of governmental

assistance beyond those that were specifically alleged in the petition was contrary to law,

Trina Solar's Br. 16–17, and therefore that Commerce's application of AFA to the Solar I

PRC programs and verification grants and tax deduction was improperly based on the Respondents' failure to cooperate with this inquiry, id. at 20–21.  Specifically, Trina Solar argues that "[t]his question illegally circumvents the requirements of the CVD statute that the Petitioner is obligated to 'allege[] the elements necessary for the imposition of the duty imposed by 19 U.S.C. § 1671(a) of this title, and which is accompanied by information reasonably available to the Petitioner supporting those allegations,'" and thus "unlawfully shifts the burden of providing the allegation of a potential subsidy from the Petitioner to the respondent."   Trina Solar's Br. 17 (quoting 19 U.S.C. § 1671a(b)(1)).   But, as discussed in connection with Trina Solar's more general arguments against Commerce's use of its 19 U.S.C. § 1677d authority here to examine the Solar I PRC programs and verification grants, because the petitioner's burden is irrelevant when Commerce chooses to exercise its independent investigative authority under Section 1677d, see 19 U.S.C. § 1677d (making no mention of any burden on the part of the petitioner), Commerce did not unlawfully shift any burden from the petitioner with respect to these grants and tax deduction.

At oral argument, counsel for Trina Solar further argued that the inquiry regarding additional forms of governmental assistance, beyond those alleged in the petition, illegally "writes out of the existing 19 U.S.C. § 1677d," Oral Arg. Tr. 8, suggesting that Commerce may only "discover" a practice indirectly, rather than pursuant to a request for the respondents' cooperation in identifying the full scope of governmental subsidization in the production of subject merchandise, see id. at 11 (arguing that "if that question is allowed, then Section [1677d] has no meaning," because "[t]here could be no discovered programs," since "the respondent would be reporting them all [and Commerce] would

never find any").  The statute does not impose such a limitation, and instead vests the agency with broad investigative discretion.  <u>See</u> 19 U.S.C. § 1677d.  Nor is such a limitation suggested by the term "discover," which is defined as "[t]o obtain knowledge of," Am. Heritage Dictionary of the English Language (3d ed. 1992) at 532,[13] without any limitation on whether such knowledge is obtained inadvertently or pursuant to direct, open-ended inquiry.

Counsel for Trina Solar also suggested at oral argument that Commerce's request for information was unreasonable because it placed an impossible burden on the Respondents, who in good faith may be unable to exhaustively ascertain all forms of governmental assistance provided in the production of subject merchandise.  <u>See</u> Oral Arg. Tr. 8–12.  But, as the Defendant points out, the unreported additional grants discovered at verification were found within Trina Solar's own accounts, specifically for government grants.  <u>See</u> <u>id.</u> at 23; Trina Solar VR at 7.  And any confusion concerning the tax deduction for disabled employees, <u>see</u> Oral Arg. Tr. 9–10, should have been addressed by seeking guidance from Commerce, rather than categorically withholding the information.  The statute does not support the use of AFA on the basis of an inadvertent failure to cooperate.  <u>See</u> 19 U.S.C. § 1677e(a) (use of facts otherwise available is subject to 19 U.S.C. § 1677m(d)); <u>id.</u> at § 1677m(d) (requiring Commerce to provide an opportunity to remedy or explain submissions deemed to be deficient); <u>id.</u> at § 1677e(b) (failure to cooperate must be based on a finding that the relevant party did not act "to the best of its ability" to comply with a request for information).  But here there

---

[13] <u>See also</u> Am. Heritage Dictionary at 532 (noting that synonyms of the word "discover" include "ascertain, determine, [and] learn," and that "[t]he central meaning shared by these verbs is 'to gain knowledge or awareness of something not known before'").

is no indication that Trina Solar attempted in good faith to comply with Commerce's request for information regarding the full scope of PRC governmental assistance that it received during the POI.  See Trina Solar VR at 7; see also Questionnaire Resp. to Sec. III of [Trina Solar], Certain Crystalline Silicon Photovoltaic Products from the [PRC], C-570-011, Investigation (Apr. 21, 2014), reproduced in Trina Solar's App., ECF No. 57-1 at Tab 7, at 67 (demonstrating Trina Solar's refusal to respond to Commerce's inquiry regarding additional forms of governmental assistance beyond those alleged in the petition).

Accordingly, because Commerce's inquiry concerning the full scope of governmental assistance provided by the GOC and received by the Respondents in the production of subject merchandise was within the agency's independent investigative authority pursuant to 19 U.S.C. §§ 1671a(a) and 1677d, this inquiry was not contrary to law.  Because the record reasonably supports Commerce's determination that the GOC failed to cooperate by not acting to the best of its ability to comply with the request for information regarding additional forms of governmental assistance, Commerce reasonably determined to use facts available, with an inference adverse to the GOC, in deciding whether the elements necessary for the imposition of countervailing duties with regard to the Solar I PRC programs were met.  See Final Decision Memo at 84–85.[14]

---

[14] Although Trina Solar did ultimately cooperate with Commerce's request for information specifically regarding the Solar I PRC programs, see Trina Solar Suppl. Resp., ECF No. 57-2 at Tab 12, at 4, Exs. 1–7, the court has previously upheld Commerce's use of adverse inferences pursuant to 19 U.S.C. § 1677e(b)(1) when a foreign government fails to act to the best of its ability to comply with Commerce's requests for information in a CVD proceeding, even where doing so "may adversely impact a cooperating party, although Commerce should seek to avoid such impact if relevant information exists elsewhere on the record."  Archer Daniels Midland Co. v. United States, 37 CIT __, 917 F. Supp. 2d 1331, 1342 (2013) (citing Fine Furniture (Shanghai) Ltd. v. United States, 36 CIT __, 865 F. Supp. 2d 1254, 1262 (2012)).

Similarly, because the record reasonably supports Commerce's determination that Trina Solar also failed to cooperate by not acting to the best of its ability to comply with this request for information, by failing to report the additional grants and tax deduction found at verification, Commerce also reasonably resorted to AFA (including an inference adverse to the interests of Trina Solar) to decide whether the elements necessary for the imposition of countervailing duties were met with regard to the additional grants and tax deduction found during verification. See id. at 86–87.

### C. Commerce's Treatment of AFA to Determine the Countervailability of the Solar I PRC Programs and the Additional Grants and Tax Deduction Found During Verification

Commerce's finding that all forty of the Solar I PRC programs were "specific" within the meaning of 19 U.S.C. § 1677(5A), and therefore countervailable, Prelim. Decision Memo at 24 (unchanged in the final determination, Final Decision Memo at 85), is not supported by substantial evidence. Similarly, Commerce's findings that each of the twenty-eight unreported grant programs and tax deduction found at verification provided a "financial contribution" within the meaning of 19 U.S.C. § 1677(5)(D), that each was "specific" within the meaning of 19 U.S.C. § 1677(5A), and that each conferred a "benefit" within the meaning of 19 U.S.C. § 1677(5)(E), Final Decision Memo at 17, are not supported by substantial evidence.

The plain language of the AFA statute states that Commerce may use inferences adverse to the interests of non-cooperating parties when "selecting from among the facts otherwise available," which may be derived from "(A) the petition, (B) a final determination in the investigation under this subtitle, (C) any previous review under section 1675 of this

title or determination under 1675b of this title, or (D) any other information placed on the record." 19 U.S.C. § 1677e(b) (emphasis added).  Although the bar is low – Commerce may use "any . . . information placed on the record," 19 U.S.C. § 1677e(b)(2)(D) – it is not non-existent.[15]

Here, Commerce has not indicated the "facts" (adverse or otherwise) that it has "select[ed]" in order to make the requisite factual findings with respect to the <u>Solar I PRC</u> programs and the verification grants and tax deduction.  <u>See</u> Final Decision Memo at 16–17, 84–87.  Instead, because the information provided by Trina Solar regarding the <u>Solar I PRC</u> programs, Trina Solar Suppl. Resp., ECF No. 57-2 at Tab 12, at 4, Exs. 1–7, was insufficient for Commerce to determine whether the <u>Solar I PRC</u> programs were "specific" under 19 U.S.C. § 1677(5A), as required for countervailability pursuant to 19 U.S.C. § 1677(5)(A), and the GOC withheld the necessary information, Final Decision Memo at 16, Commerce found – entirely "as AFA [adverse facts available]" under 19 U.S.C. § 1677e(b), and pointing to no specific factual evidence or allegations in the record – that all forty of the <u>Solar I PRC</u> programs were "specific" within the meaning of 19 U.S.C. § 1677(5A), and therefore countervailable.  Prelim. Decision Memo at 24 (unchanged in the final determination, Final Decision Memo at 85).  Similarly, finding that the record lacked necessary information, and concluding that Trina Solar had failed to cooperate to the best of its ability, Commerce also found – entirely "as AFA [adverse facts available]" under 19 U.S.C. § 1677e(b), and without relying on any record evidence or allegations –

---

[15] For example it is apparent that, at the very least, Commerce may place on the record whatever information it has regarding the <u>Solar I PRC</u> programs from the <u>Solar I PRC</u> proceeding, and make its inferences therefrom, <u>see</u> 19 U.S.C. § 1677e(b)(2)(C), in addition to making specific inferences from the information discovered at verification that led the agency to conclude that it had discovered apparent subsidies, <u>see</u> Trina Solar VR at 7.

that each of the twenty-eight unreported grant programs and tax deduction found at verification provided a "financial contribution" within the meaning of 19 U.S.C. § 1677(5)(D), that each was "specific" within the meaning of 19 U.S.C. § 1677(5A), and that each conferred a "benefit" within the meaning of 19 U.S.C. § 1677(5)(E).   Final Decision Memo at 17.

At oral argument, Defendant and SolarWorld (the domestic industry petitioner) argued that, when AFA is invoked pursuant to 19 U.S.C. § 1677e(b), no factual findings or citation to record evidence is required, suggesting that Commerce may determine that any unreported governmental assistance is a countervailable subsidy "[s]olely on the basis of [the GOC's and Trina Solar's] non-cooperation."  See Oral Arg. Tr. 21; see also id. at 30 (counsel for SolarWorld "shar[ing] the Defendant's position that [19 U.S.C. §§ 1677e & 1677(5A)] do not require Commerce to identify specific factual information on which it relies for purposes of the application of AFA").

In support of its argument that no factual findings are required when AFA is employed, the Defendant points to RZBC Grp. Shareholding Co. v. United States, 39 CIT __, 100 F. Supp. 3d 1288 (2015), as a case that "addressed this exact issue."  Oral Arg. Tr. 18.  But the facts of that case are materially different.  There, unlike here, Commerce applied AFA to a program about which the record contained at least some factual allegations and supporting evidence.  RZBC, 39 CIT at __, 100 F. Supp. 3d at 1294–97 (explaining that the aid at issue in that case was investigated pursuant to a new subsidy petition containing allegations and supporting evidence).   Thus, unlike here, where Commerce did not rely on any evidentiary support to find that all of the Solar I PRC programs and all of the verification grants and tax deduction are countervailable

subsidies, in <u>RZBC</u> Commerce used AFA to make adverse inferences derived from factual information contained in the petition, in accordance with 19 U.S.C. § 1677e(b)(1). <u>See</u> <u>RZBC</u>, 39 CIT at __, 100 F. Supp. 3d at 1294–97.

Here, by contrast, Commerce has placed no relevant factual information on record, and so cannot even rely on the low bar set by 19 U.S.C. § 1677e(b)(2)(D) – that its adverse inferences be derived from "any other information placed on the record." Commerce has not indicated that it relied on any information, from any source, to find that all of the <u>Solar I PRC</u> programs and verification grants and tax deduction satisfy the elements for countervailability.  <u>See</u> Final Decision Memo at 84–87.

For example, to be countervailable, a subsidy must be specific.   19 U.S.C. § 1677(5)(A).  Because "all governments, including the United States, intervene in their economies to one extent or another, and to regard all such interventions as countervailable subsidies would produce absurd results," the specificity test is meant to exclude foreign subsidies that "are broadly available and widely used throughout an economy."  Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316 (1994), <u>reprinted in</u> 1994 U.S.C.A.A.N. 4040, 4242 ("SAA") (citing <u>Carlisle Tire & Rubber Co. v. United States</u>, 5 CIT 229, 564 F. Supp. 834 (1983)).  To that end, there are many ways by which a government aid program may satisfy the specificity requirement[16] – the subsidy may be "in law or in fact, contingent upon export

---

[16] The choice is therefore not "binary," as the Defendant suggests, <u>see</u> Oral Arg. Tr. 20–21(arguing that, to effectuate the purpose of AFA, which is to incentivize parties to cooperate, by ensuring that they do not benefit from non-cooperation, Commerce had no choice but to use AFA to find that all of the <u>Solar I PRC</u> programs and all of the verification grants and tax deduction were "specific" within the meaning of 19 U.S.C. § 1677(5A), because specificity is a "binary

(footnote continued)

performance," or "contingent upon the use of domestic goods over imported goods," or where "the authority providing the subsidy, or the legislation pursuant to which the authority operates, expressly limits access to the subsidy to an enterprise or industry," or where the actual recipients of the subsidy are "limited in number," or an enterprise or industry is "a predominant user of the subsidy" or "receives a disproportionately large amount of the subsidy" or "is favored over others."  19 U.S.C. § 1677(5A)(A)–(D).

In RZBC, upon which the Defendant relies here, Commerce used AFA to infer from the available record evidence that the GOC's subsidization of calcium carbonate was disproportionately received by the chemicals industry.  See RZBC, 39 CIT at __, 100 F. Supp. 3d at 1294–1299.  Commerce then concluded that the calcium carbonate subsidy was "specific" in accordance with 19 U.S.C. § 1677(5A).  See 19 U.S.C. § 1677(5A)(D)(iii).  But unlike Commerce's finding regarding the calcium carbonate subsidy in RZBC, the agency's determination here – that all of the Solar I PRC programs and all of the verification grants and tax deduction are "specific in accordance with 19 U.S.C. § 1677(5A)," see Final Decision Memo at 84–87 – is a sweeping legal conclusion lacking any factual foundation.

Consider, for example, the tax deduction for disabled employees.  A principal purpose of the specificity requirement for countervailability is "to differentiate between those subsidies that distort trade by aiding a specific company or industry, and those that benefit society generally (like the police, fire protection, roads and schools) and thus

---

choice" – a program is either "specific" or it is not – and Commerce must choose the affirmative to ensure that neither the GOC nor Trina Solar benefits from its non-cooperation).  On the contrary, any number of factual conditions may obtain to demonstrate that a government aid program is "specific" to a particular enterprise or industry, see 19 U.S.C. § 1677(5A)(A)–(D), but a determination that a large number of diverse government programs are "specific" in the abstract, without reference to any facts at all, is not a factual determination.

minimally distort trade, if at all." Allegheny Ludlum Corp. v. United States, 24 CIT 452, 463, 112 F. Supp. 2d 1141, 1152 n.15 (2000).   Here, Commerce's verification report states that, when Commerce discovered the unreported tax deduction for disabled employees, the agency "asked Trina Solar officials to provide information that shows the eligibility criteria for this deduction," and was provided with documentation "indicat[ing] that [any] enterprises that employ disabled persons are eligible."   Trina Solar VR at 6 (citing Ex. 16 ("Fund for the Disabled Person")).   But in finding, purely "as AFA," that this tax deduction is "specific" (without even specifying which enterprise/industry it is specific to), Commerce fails to explain how this conclusion comports with a reasonable reading of the record evidence that the tax deduction for employing disabled persons appears to be precisely the sort of subsidy that "benefit[s] society generally," which the specificity requirement is designed to avoid.   See Allegheny Ludlum, 24 CIT at 463, 112 F. Supp. 2d at 1152 n.15.   By bypassing the prerequisite factual findings to reach the legal conclusion purely "as AFA," Commerce illegally circumvents its obligation to make determinations that are supported by a reasonable reading of the record, including consideration of the relevant evidence that "fairly detract[s]" from the reasonableness of its conclusions.   See Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).

Accordingly, because Commerce has improperly reached legal conclusions without the support of requisite factual findings, the agency's determination that all of the Solar I PRC programs and all of the verification grants and tax deduction meet the legal elements for countervailability must be remanded for reconsideration.   Although Commerce reasonably invoked its authority under 19 U.S.C. § 1677e to use facts otherwise available, with an inference adverse to the GOC and Trina Solar, the agency

must still make the necessary factual findings to satisfy the requirements for countervailability. See 19 U.S.C. §§ 1677e(a)–(c) (providing that, even when using facts otherwise available with adverse inferences, Commerce must still point to actual information on the record to make required factual determinations); id. at § 1677(5)(A) (requiring a factual determination of "specificity" under 19 U.S.C. § 1677(5A) as an element of countervailability); id. at § 1677(5A) (providing for a range of factual determinations to satisfy § 1677(5)(A)'s requirement for "specificity"); id. at §§ 1677(5)(A), 1677(5)(B)(i) (requiring a factual determination of "financial contribution" as an element of countervailability); id. at § 1677(5)(D) (providing for a range of factual determinations to satisfy § 1677(5)(B)(i)'s requirement for "financial contribution"); id. at §§ 1677(5)(A), 1677(5)(B) (requiring a factual determination of "benefit" as an element of countervailability); id. at § 1677(5)(E) (providing for a range of factual determinations to satisfy § 1677(5)(B)'s requirement for "benefit").

Importantly, however, Commerce is not required to solicit the GOC again for the information that the GOC has repeatedly and categorically refused to provide in this proceeding. Cf. Oral Arg. Tr. 21 (arguing that the court should not remand this issue because the GOC should not be allowed to benefit from its non-cooperation in this proceeding). As held above, Commerce properly determined to use AFA with regard to the Solar I PRC programs and verification grants and tax deduction, with inferences adverse to the GOC and Trina Solar, respectively. Thus, Commerce need not query the GOC again, but must nevertheless search "the far reaches of the record," RZBC, 39 CIT at __, 100 F. Supp. 3d at 1298 – and may re-open the record – to make the prerequisite factual findings. See 19 U.S.C. § 1677e(b)(1), (b)(2)(A)–(D); see also Archer Daniels

<u>Midland Co. v. United States</u>, 37 CIT __, 917 F. Supp. 2d 1331, 1342 (2013) (internal citation omitted).

### D. Commerce's Selection of AFA Rates for the Verification Grants and Tax Deduction

Trina Solar also challenges the AFA-based subsidy rates that Commerce selected for the twenty-eight grants and tax deduction discovered at verification.  Trina Solar's Br. 23–24.  Because Commerce's determinations to countervail the verification grants and tax deduction are remanded for additional consideration, no opinion is required at this time regarding Commerce's selection of these rates.  Should Commerce again determine to countervail the verification grants and tax deduction after reconsideration on remand, however, the agency must ensure that its selection of subsidy rates is reasonable.

The parties agree that Commerce's practice when selecting AFA-based subsidy rates in CVD investigations is to use the highest non-*de minimis* rate calculated for an identical or similar/comparable (based on the treatment of the benefit) program, if available, or, where there is no comparable program, to apply the highest calculated rate from any non-company specific program, unless the industry in the proceeding cannot use that program.  <u>See</u> Final Decision Memo at 10; Trina Solar's Br. 23.  Although Commerce maintains that it applied this methodology to calculate the AFA-based subsidy rates assigned to the twenty-eight verification grants and tax deduction, Final Decision Memo at 10, 88, Trina Solar is correct that "Commerce did not present any analysis of how it selected the specific AFA rates it applied to Trina Solar's 28 grants or tax program for disabled persons." Trina Solar's Br. 23.

Commerce states only that the agency applied its usual methodology[17] to select, for each of the twenty-eight verification grants, the 0.58 percent rate that was calculated for the "Special Fund for Energy Saving Technology" in the CVD investigation of chlorinated isocyanates from the PRC, without any discussion as to how this "Special Fund for Energy Saving Technology" relates to each of the twenty-eight grant programs at issue or to the other information (or lack thereof) on record, or whether this program is even available to the solar panel industry.  See Final Decision Memo at 88.  Similarly, with respect to the tax deduction, Commerce simply states, without any additional discussion, that the agency used the 9.71 percent rate calculated for the "VAT and Import Duty Exemptions on Imported Material" program in an administrative review of the CVD order covering off-the-road tires from the PRC.  See id.  But these statements do not provide sufficient information to permit the court to judge whether or not the agency's choices here comport with its stated (and undisputed) practice.

Because "[t]he grounds upon which an [agency action] must be judged are those upon which the record discloses that [the] action was based," Changzhou Wujin Fine Chem. Factory Co. v. United States, 701 F.3d 1367, 1377 (Fed. Cir. 2012) (quoting SEC v. Chenery Corp., 318 U.S. 80, 87 (1943)), such that "[r]eview of an administrative decision must be made [solely] on the grounds relied on by the agency," id. at 1379, should Commerce continue to hold that the verification grants and tax deduction at issue here require the calculation of AFA-based subsidy rates in this proceeding, the agency

---

[17] In support of its practice in this regard, Commerce repeatedly cites to "Shrimp from the PRC and its accompanying Issues and Decision Memorandum," see Final Decision Memo at 10, 88, without ever providing a more specific citation for "Shrimp from the PRC," see Final Decision Memo.

must explicitly present its analysis as to how its selection of rates comports with its stated practice.

## II. Provisions of Aluminum Extrusions and Solar Glass and the Specificity Requirement

Respondents also challenge Commerce's determinations that the provisions of aluminum extrusions and solar glass were specific within the meaning of 19 U.S.C. § 1677(5A).  Trina Solar's Br. 24–29.  The court sustains Commerce's determinations that the provisions of aluminum extrusions and solar glass were specific.

### A. Aluminum Extrusions

As mentioned above, the specificity element of countervailability ensures that broadly beneficial subsidies are excluded from countervailing measures.  See SAA at 4242 (internal citation omitted); see also 19 U.S.C. § 1677(5)(A).  A subsidy will satisfy the specificity requirement when, *inter alia*, "[t]he actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number."   19 U.S.C. § 1677(5A)(D)(iii).[18]   Commerce "is not required to determine whether there are shared characteristics among the enterprises or industries that are eligible for, or actually receiv[ing], a subsidy," 19 C.F.R. § 351.502(b), but only whether they are, in fact, "limited in number."  19 U.S.C. § 1677(5A)(D)(iii).

Here, Commerce found that the provision of aluminum extrusions was specific within the meaning of 19 U.S.C. § 1677(5A)(D)(iii)(I) because, although the GOC's responses indicated that aluminum extrusions are used in "a variety" of sectors across the PRC, "on an enterprise or industry basis, the industries within those sectors that

---

[18] "[A]n enterprise or industry" is, by definition, "a foreign enterprise or foreign industry and includes a group of such enterprises or industries."  19 U.S.C. § 1677(5A)(D).

actually consume aluminum extrusions are limited in number." Final Decision Memo at

69.[19]  Although Trina Solar argues that this variety undermines any finding of specificity,

Trina Solar misapprehends the question at hand.[20]  Regardless of the variety of recipient

industries, see 19 C.F.R. § 351.502(b), when those recipient industries are "limited in

number," specificity is established.  19 U.S.C. § 1677(5A)(D)(iii).  The record evidence

that Trina Solar puts forward to support that variety[21] does not undermine the evidence

Commerce relies upon to reasonably conclude that the recipient industries are limited in

---

[19] Specifically, the construction industry (63.25%), transportation industry (12.45%), mechanical and electrical equipment industry (12.35%), consumer durable goods industry (4.62%), electricity (3.31%), and "[o]ther industries" (4.02%).  Final Decision Memo at 68.

[20] Trina Solar's reliance on PPG Indus., Inc. v. United States, 978 F.2d 1232 (Fed. Cir. 1992) ("PPG II") to "further develop[] [the current statutory and regulatory] notion of specificity," see Trina Solar's Br. 26, is inapposite for two reasons.  First, the case predates the Uruguay Round Agreements Act, Pub. L. 103–465, 108 Stat. 4809 (enacted December 8, 1994) ("URAA"), and therefore the enactment of the statute, 19 U.S.C. § 1677, and regulation, 19 C.F.R. § 351.502, which Trina Solar would have the case "develop[]."  Cf. Samsung Elecs. Co. v. United States, 38 CIT __, 973 F. Supp. 2d 1321, 1330 (2014).  Further, Commerce, in promulgating 19 C.F.R. § 351.502(b), expressly found PPG II irrelevant to the post-URAA statutory language, and explained that 19 C.F.R. § 351.502(b) codifies Commerce's position that it "is not required to determine whether there are shared characteristics among enterprises or industries that are eligible for, or actually receive, a subsidy in determining whether that subsidy is specific." Countervailing Duties, 63 Fed. Reg. 65,348, 65,357 (Dep't Commerce Nov. 25, 1998) (final rule).  Second, even if PPG II were applicable post-URAA, the court in PPG II held that "the actual make-up of the eligible firms must be evaluated" to determine "whether those firms comprise a specific industry or group of industries," PPG II, 978 F.2d at 1240–41, not, as Trina Solar would argue, to ensure variety of firms, but rather to ensure genuine numerosity of industries, id. ("Because eligibility requirements always serve to limit participation in any given program and may do so indiscriminately, something more must be shown to prove that the program benefits only a specific industry or group of industries.  Similarly, although the actual number of eligible firms must be considered, it is not controlling.  Instead, the actual make-up of the eligible firms must be evaluated. This analysis determines whether those firms comprise a specific industry or group of industries.").

[21] Trina Solar argues that there is "an array of construction uses of aluminum extrusions," Trina Solar's Br. 27 (citation to the record omitted), but it is the number of industries, not variety of applications within a single industry, that is at issue.  Although Trina Solar points to additional evidence on the record indicating that "as many as 113 industries out of 124 total industries in China consume aluminum, of which aluminum extrusions are a part," id., data regarding aluminum consumption generally is not relevant to aluminum extrusion consumption specifically.  Cf. 5 U.S.C. §§ 556(c)(3), (d) (agencies consider all "relevant evidence" that is not "immaterial" or "unduly repetitious").  Finally, Trina Solar's general assertion of "massive and growing demand for aluminum extrusions," Trina Solar's Br. 27, has no link to the period at issue.

number.  See Final Decision Memo at 68–69; Nippon Steel Corp. v. United States, 458

F.3d 1345, 1351 (Fed. Cir. 2006) (substantial evidence review asks whether the agency's

determination was reasonable on the record as a whole).  Commerce's determination that

the provision of aluminum extrusions was limited on an industry basis comports with a

reasonable reading of the record evidence, and is therefore sustained.

### B.  Solar Glass

Similarly, Commerce determined that the provision of solar glass was also specific

pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(I), based on a finding that "the provision of solar

glass is limited to [] only [one] industry," as "specifically identified by the GOC, the solar

industry."   Final Decision Memo at 71 (citation to the record omitted).   Trina Solar

challenges this finding because, as Commerce found, the GOC also reported that "solar

glass is suitable for many downstream applications."  See Trina Solar's Br. 28–29.  But

again, it is not a question of variety of companies or applications within an industry, but

rather of the number of industries.   19 U.S.C. § 1677(5A)(D)(iii)(I).    Here, Commerce's

determination that the provision of solar glass was specific to a single industry, the solar

industry, and therefore to a limited number of recipients, is supported by a reasonable

reading of the record evidence, and is therefore sustained. See Final Decision Memo at

71; Nippon Steel, 458 F.3d at 1351.

### III. Provision of Polysilicon and the Scope of Subject Merchandise

Trina Solar argues that the scope of subject merchandise here prohibits

Commerce from countervailing the provision of polysilicon.  Trina Solar's Br. 29–30.

Specifically, Trina Solar contends that Commerce may not countervail the PRC's

provision of polysilicon in this proceeding because polysilicon is an input for solar cell

production, whereas the scope of this proceeding covers only panels assembled from non-PRC cells. See id. (relying on 19 C.F.R. § 351.525(b)(5)). Commerce's determination regarding the GOC's provision of polysilicon is sustained as it is reasonable.

The GOC's provision of polysilicon to the Respondents was not specifically tied to non-subject merchandise. As Commerce explained, "[a] subsidy is tied only when the intended use is known to the subsidy giver and so acknowledged prior to, or concurrent with, the bestowal of the subsidy." Final Decision Memo at 64; Royal Thai Gov't v. United States, 30 CIT 1072, 1085–86, 441 F. Supp. 2d 1350, 1363 (2006) (affirming Commerce's practice in this regard). Here Commerce found "no record evidence that the respondent companies' polysilicon providers were aware of the intended use of the subsidies at the time of bestowal," Final Decision Memo at 64, and Trina Solar cites nothing to suggest otherwise, see Trina Solar's Br. 29–30. Accordingly, Trina Solar's reliance on 19 C.F.R. § 351.525(b)(5), which concerns subsidies "tied to a particular product," is misplaced. See also 19 C.F.R. § 351.525(b)(5)(ii) ("Exception. If a subsidy is tied to production of an input product, then the Secretary will attribute the subsidy to both the input and downstream products produced by a corporation.").

Trina Solar also argues that Commerce's decision to countervail the provision of polysilicon in this Solar II PRC proceeding results in double-counting, because Commerce also countervailed the provision of polysilicon in the related Solar I PRC CVD proceeding. Trina Solar's Br. 30. But there is no double-counting here because subsidy rates are calculated as an ad valorem percentage of sales of merchandise subject to a particular order. Because the Solar I PRC and Solar II PRC proceedings do not overlap in their

coverage of product sales (<u>Solar I PRC</u> covers only sales of solar panels assembled from solar cells manufactured in the PRC, whereas <u>Solar II PRC</u> covers only sales of solar panels assembled in the PRC from cells manufactured outside the PRC), such that no single product is subject to more than one order, there is no double-counting. <u>See</u> Def.'s Resp. to Mots. J. Admin. R. 46, Apr. 21, 2016, ECF No. 66 ("Def.'s Resp.") (providing a mathematical illustration of this).

Because Commerce's determination that the GOC's provision of polysilicon aided in the production of subject merchandise is supported by a reasonable reading of the record, it is therefore sustained.

### IV. Export Buyer's Credit Program

Finally, Trina Solar argues that Commerce's determination to include the PRC Export-Import Bank's Export Buyer's Credit Program in the calculation of Trina Solar's subsidy rate is not supported by substantial evidence.  Trina Solar's Br. 31–33.  The Export-Import Bank of China ("PRC Ex-Im") provides intermediate- and long-term credit to foreign importers that purchase goods from Chinese exporters (the "Export Buyer's Credit Program").  <u>See</u> Questionnaire Resp. to Sec. III of [Trina Solar] (Apr. 21, 2014), Ex. D.1, Art. 2. ("GOC Resp."), <u>reproduced in</u> Trina Solar's App., ECF No. 57-1 at Tab 6 and App. to [SolarWorld's Br.], ECF Nos. 54 (conf. version) & 55 (pub. version) ("SolarWorld's App.") at Tab 4.

In response to Commerce's query regarding this program, the GOC stated that it had confirmed with PRC Ex-Im and the Respondents that no U.S. customer of any of the Respondents had used the Export Buyer's Credit Program during the POI.  GOC Resp. at 83 <u>reproduced in</u> Trina Solar's App., ECF No. 57-1 at Tab 6.  But when Commerce

sought to verify this information, during the verification procedure in China, the GOC refused to permit Commerce to access the PRC Ex-Im's records.  Final Decision Memo at 92.  Commerce therefore found that this information could not be verified, and that the GOC had failed to cooperate to the best of its ability.  See id. at 15–16, 94.  Based on these findings, Commerce concluded that "AFA is warranted in determining that the respondents have used and benefited from this program," id. at 94; see 19 U.S.C. §§ 1677e(a)(2)(D) (authorizing resort to "facts otherwise available" if submitted information cannot be verified), 1677e(b) (authorizing use of inferences adverse to the interests of a non-cooperating party), and accordingly determined that both mandatory Respondents, including Trina Solar, benefited from the Export Buyer's Credit Program during the POI.  Final Decision Memo at 16.

Trina Solar challenges this determination, contending that the company conclusively demonstrated that its sole U.S. customer did not use this program during the POI.  Trina Solar's Br. 31–33.  But Commerce determined that Trina Solar's verification was inconclusive in this regard.  Final Decision Memo at 91–94.  As Commerce explained:

> The Department cannot typically look at the contents of a filing cabinet or binder and determine whether it includes everything that it is supposed to include. Absent a well documented understanding of how an exporter would be involved in the application of its customer for an export buyer credit and what records the exporter might retain, we would have no way of knowing whether the records we review at a company verification necessarily include any applications or compliance records that an exporter might have from its participation in the provision of export credits to its buyers.

Final Decision Memo at 93–94.

This is a reasonable explanation for Commerce's conclusion that only the GOC, and in particular the PRC Ex-Im, could provide and verify the information needed to determine whether a benefit was conferred to Respondents during the POI from the

Export Buyer's Credit Program.   Accordingly, Commerce reasonably determined that Trina Solar's verification did not conclusively demonstrate that Trina Solar did not benefit from this program during the POI.

Because the GOC – the sole party with access to the necessary information – submitted information that could not be verified, and failed to act to the best of its ability by preventing Commerce from verifying this information, Commerce reasonably applied 19 U.S.C. §§ 1677e(a)(2)(D) & 1677e(b).   In doing so, Commerce selected from among the facts otherwise available, using an inference adverse to the GOC's interest, to make the factual finding that, like PRC companies benefitting from a similar program in a prior proceeding, the PRC companies in this proceeding had benefited from the Export Buyer's Credit Program during the POI, at the rate of 10.54 percent *ad valorem*.   See Final Decision Memo at 16.

Accordingly,   because   Commerce's   use   of   and   findings   under   19   U.S.C. §§ 1677e(a)(2)(D) and 1677e(b) comport with a reasonable reading of the record, the agency's determination to include a benefit from the Export Buyer's Credit Program in the calculation of Trina Solar's subsidy rate is supported by substantial evidence, and is therefore sustained.

## V. Benchmark Prices for Polysilicon and Solar Glass

SolarWorld challenges Commerce's use of 1 percent and 12 percent import duty rates in its 19 C.F.R. § 351.511(a)(2)(ii) calculations of benchmark prices for polysilicon and solar glass, respectively, as unreasonable and unsupported by substantial evidence. SolarWorld's Br. 18–26.   The court sustains as reasonable Commerce's use of the 1 percent and 12 percent import duty rates.

### A.  Polysilicon Benchmark Price Calculation

To assess the adequacy of remuneration for a good or service obtained from the foreign government, see 19 U.S.C. § 1677(5)(E)(iv) (providing that the "benefit" required as an element of countervailability is conferred, *inter alia*, when "goods or services are provided for less than adequate remuneration"), Commerce compares the price paid by the respondent to a benchmark rate, ideally "a market-determined price for the good or service resulting from actual transactions in the country in question."   19 C.F.R. § 351.511(a)(2)(i).   Where there is no usable market-determined price available, Commerce "will seek to measure the adequacy of remuneration by comparing the government price to a world market price" if "it is reasonable to conclude that such price would be available to purchasers in the country in question," id. at § 351.511(a)(2)(ii), "adjust[ing] the comparison price to reflect the price that a firm actually paid or would pay if it imported the product," including delivery charges and import duties, id. at § 351.511(a)(2)(iv).  See Essar Steel Ltd. v. United States, 678 F.3d 1268, 1274 (Fed. Cir. 2012).  Where there is no world market price available, Commerce "will normally measure the adequacy of remuneration by assessing whether the government price is consistent with market principles."  19 C.F.R. at § 351.511(a)(2)(iii).[22]

---

[22] See Final Decision Memo at 8 ("19 CFR 351.511(a)(2) sets forth the basis for identifying appropriate market-determined benchmarks for measuring the adequacy of remuneration for government-provided goods or services. These potential benchmarks are listed in hierarchical order by preference: (1) market prices from actual transactions within the country under investigation (e.g., actual sales, actual imports or competitively run government auctions) ('tier one'); (2) world market prices that would be available to purchasers in the country under investigation ('tier two'); or (3) an assessment of whether the government price is consistent with market principles ('tier three').")

Here, lacking a usable market-determined price under § 351.511(a)(2)(i), Commerce set the polysilicon benchmark price pursuant to § 351.511(a)(2)(ii), and, per § 351.511(a)(2)(iv), adjusted this benchmark price to reflect the import duty rate it found to be generally applicable for all PRC imports of polysilicon during the POI (1 percent). Final Decision Memo at 8, 20, 64–65.[23]  SolarWorld challenges Commerce's use of this 1 percent import duty rate as unsupported by substantial evidence.  See SolarWorld's Br. 18–23.  According to SolarWorld, Commerce "improperly disregarded the [4 percent] import duty rate" also provided on the record by the GOC and, as such, is required by its own regulation, 19 C.F.R. § 351.511(a)(2)(ii), and in keeping with prior cases – where Commerce has averaged the various duties reported by a foreign government as applicable to the import transactions in question – to average the 1 percent and 4 percent rates in its calculation of the benchmark price.  See SolarWorld's Br. 18–20.  SolarWorld argues that the record is too vague to support a decision to exclude the 4 percent rate. Id. at 18–20.

SolarWorld is correct that, in its response to Commerce's initial questionnaire, the GOC provided more than one possible rate: a value added tax ("VAT") of 17 percent, a general import duty rate of 30 percent, a most favored nation ("MFN") import duty rate of 4 percent, and a "temporary" MFN import duty rate of 1 percent.  GOC Resp. at 134, reproduced in SolarWorld's App., ECF No. 55 at Tab 4.  The GOC explained that "commodities that are imported from the members of the WTO or the countries or regions that have bilateral reciprocal agreements are levied at the temporary import tax rates" – that is, the 1 percent rate.  Id.  At verification Commerce "confirmed that the temporary

---

[23] None of the parties here contested Commerce's decision to use second tier benchmarks.  See Final Decision Memo at 8.

import duty rate of one percent was in effect for [all] imports of polysilicon throughout the POI, rather than the MFN rate of four percent." Final Decision Memo at 64. Accordingly, Commerce found it appropriate to adjust the polysilicon benchmark price by the 1 percent import duty rate that was actually paid for the imported polysilicon. Id. at 65; see 19 C.F.R. § 351.511(a)(2)(iv).

Commerce's finding that the import duty actually paid for all PRC imports of polysilicon during the POI was 1 percent is supported by a reasonable reading of the record, see Final Decision Memo at 64–65 (citing Verification of the Questionnaire Resp. Submitted by the [GOC], C-570-011, Investigation at 10 (Oct. 3, 2014) ("GOC VR"), reproduced in SolarWorld's App., ECF No. 54 at Tab 18; GOC Resp. at 134, reproduced in SolarWorld's App., ECF No. 55 at Tab 4), and is therefore sustained. Commerce has supported its use of the 1 percent rate with verified, direct evidence from the GOC's submissions and with reasonable inferences from that evidence. See Daewoo Elecs. Co. v. Int'l Union, 6 F.3d 1511, 1520 (Fed. Cir. 1993). SolarWorld does not point to any evidence to the contrary, but argues that this direct, verified evidence is too vague. SolarWorld's Br. 18–21. In effect, SolarWorld asks the court to "substitute [its] judgment for that of the [agency] as to the weight of the evidence or the inferences to be drawn therefrom." Cross v. Dep't of Transp., 127 F.3d 1443, 1448 (Fed. Cir. 1997) (citation omitted). This is not what the substantial evidence standard requires or allows. Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Because Commerce reasonably inferred that all relevant import transactions of polysilicon were subject to the 1 percent import duty, it follows that the agency reasonably declined to average this duty rate with any other values. See 19 C.F.R. § 351.511(a)(2)(iv) (providing that, when measuring

adequate remuneration, Commerce will adjust the comparison price "to reflect the price that a firm actually paid or would pay if it imported the product," including actual import duties).

### B. Solar Glass Benchmark Price Calculation

Here, again lacking a usable market-determined price under 19 C.F.R. § 351.511(a)(2)(i), Commerce set the solar glass benchmark price pursuant to § 351.511(a)(2)(ii), and per § 351.511(a)(2)(iv), adjusted this benchmark price to reflect the MFN import duty rate (12 percent) it found to be generally applicable to imports of solar glass during the POI.   Final Decision Memo at 72.   SolarWorld challenges Commerce's use of the 12 percent rate as unsupported by substantial evidence, arguing that Commerce should have averaged the 12 percent MFN rate with the non-MFN 50 percent rate initially provided by the GOC.  Solar World's Br. 23–26.

The GOC explained that it had initially incorrectly provided the non-MFN 50 percent rate for "flat glass," rather than "solar glass," and subsequently corrected the record to reflect the MNF 12 percent tariff rate applicable specifically to solar glass. GOC's Minor Corrections at Verification (Sept. 3, 2014), reproduced in [Pub.] App. of Docs. Supp. Def.'s Resp. to Mots. for J. Upon the Agency R., Apr. 22, 2016, ECF No. 71-9 at Tab 9.  At verification, Commerce accepted this correction.  Final Decision Memo at 72; GOC VR at 13, reproduced in SolarWorld's App., ECF No. 55 at Tab 18.  Finding no evidence to the contrary, Commerce reasonably determined that this verified import duty rate was applicable to all PRC imports of solar glass during the POI, and accordingly reasonably declined to average that rate with any other values.  See Final Decision Memo at 72; 19 C.F.R. § 351.511(a)(2)(iv).

### VI. Allegations of Uncreditworthiness

SolarWorld also challenges Commerce's decision not to investigate SolarWorld's allegation that the mandatory respondents were uncreditworthy during the POI. SolarWorld's Br. 10–17.   Commerce requests leave to reconsider this decision.   Def.'s Resp. 61–63.   Specifically, Defendant notes that pursuant to the agency's regulations, Commerce will initiate an investigation into a firm's creditworthiness when there is a "specific allegation by the petitioner that is supported by information establishing a reasonable basis to believe or suspect that the firm is uncreditworthy," id. at 62 (quoting 19 C.F.R. § 351.505(a)(6)(i)), but here Commerce found that SolarWorld failed to satisfy that initiation threshold, partly because the request did not specify a time period for Commerce to investigate, id. (citing Final Decision Memo at 95–96).   Upon considering SolarWorld's argument that it did in fact specify particular years in its allegation, see SolarWorld's Br. 15–16, Defendant now acknowledges that "the allegation did relate to the years 2005, 2007, and 2012 (in the case of Trina [Solar]) and 2010 and 2012 (in the case of [the other mandatory respondent])," and therefore requests leave to "reevaluate whether SolarWorld established a 'reasonable basis to believe or suspect' that [the mandatory respondents] were uncreditworthy during any of the years identified in SolarWorld's allegation."   Def.'s Resp. 62 (quoting 19 C.F.R. § 351.505(a)(6)(i)).   No party objects, and this request is granted.

### CONCLUSION

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's final determination with respect to: (1) the agency's use of AFA to conclude that all of the Solar I PRC programs and verification grants and tax deduction meet the elements for countervailability, and (2) the decision not to

investigate SolarWorld's allegation that the mandatory respondents were uncreditworthy during the POI, is remanded for further consideration consistent with this opinion; and it is further

**ORDERED** that Commerce's final determination is sustained in all other respects; and it is further

**ORDERED** that Commerce shall file its remand determination with the court within 60 days of this date; and it is further

**ORDERED** that the parties shall have 30 days thereafter to file comments; and it is further

**ORDERED** that the parties shall have 15 days thereafter to file replies to comments on the remand determination.

/s/ Claire R. Kelly
Claire R. Kelly, Judge


Dated: December 30, 2016
       New York, New York