Slip Op. 17–122

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CHANGZHOU TRINA SOLAR ENERGY CO., LTD. ET AL.,** | |
| **Plaintiffs and Consolidated Plaintiff,** | |
| **and** | |
| **YINGLI GREEN ENERGY AMERICAS, INC. ET AL.,** | **Before Claire R. Kelly, Judge** |
| **Plaintiff-Intervenors,** | **Consol. Court No. 15-00068** |
| **v.** | **PUBLIC VERSION** |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **SOLARWORLD AMERICAS, INC.,** | |
| **Defendant-Intervenor and Consolidated Defendant-Intervenors.** | |

### OPINION

[Sustaining the U.S. Department of Commerce's remand determination in the countervailing duty investigation of certain crystalline silicon photovoltaic products from the People's Republic of China.]

Dated: September 8, 2017

Mark P. Lunn, Thompson Hine LLP, of Washington, DC, for Changzhou Trina Solar Energy Co., Ltd. and Trina Solar (Changzhou) Science & Technology Co., Ltd.

Neil R. Ellis, Richard L.A. Weiner, Brenda Ann Jacobs, and Rajib Pal, Sidley Austin, LLP, of Washington, DC, for Yingli Green Energy Americas, Inc., Yingli Green Energy Holding Co., Ltd., and Canadian Solar Inc.

Timothy C. Brightbill and Laura El-Sabaawi, Wiley Rein, LLP, of Washington, DC, for SolarWorld Americas, Inc.

Justin Reinhart Miller, Senior Trial Counsel, Civil Division, U.S. Department of Justice, of New York, NY, for Defendant.  With him on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.  Of Counsel on the brief was Shelby Mitchell Anderson, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Kelly, Judge:  Before the court for review is the U.S. Department of Commerce's ("Department" or "Commerce") remand determination in the countervailing duty ("CVD") investigation of certain crystalline silicon photovoltaic products from the People's Republic of China ("PRC" or "China"), filed pursuant to the court's order in Changzhou Trina Solar Energy Co., Ltd. et al. v. United States, 40 CIT __, 195 F. Supp. 3d 1334 (2016) ("Changzhou Trina").  See Final Results of Redetermination Pursuant to Court Remand, May 1, 2017, ECF No. 98-1 ("Remand Results").  For the reasons that follow, Commerce has complied with the court's order in Changzhou Trina, and the Remand Results are sustained.

## BACKGROUND

The court assumes familiarity with the facts of this case as discussed in the previous opinion, see Changzhou Trina, 40 CIT at __, 195 F. Supp. 3d at 1338–58, and here recounts the facts relevant to the court's review of the Remand Results.  In the course of this countervailing duty investigation, Commerce discovered additional subsidy programs that had not been identified in the petition.  See Issues and Decision Mem. for the Final Determination in the [CVD] Investigation of Certain Crystalline Silicon

**PUBLIC VERSION**

Photovoltaic Products from the [PRC], C-570-011, at 16–17, 84–88 (Dec. 15, 2014), ECF

No. 36-4 ("Final Decision Memo"); [CVD] Investigation of Certain Crystalline Silicon

Photovoltaic Products from the [PRC]: Trina Solar Final Calculation Mem. at 7–10, CD

367–368, bar codes 3247979-01–02 (Dec. 15, 2014) ("Trina Solar Final Calc. Memo").[1]

These programs fall into two categories: (i) forty governmental assistance programs that

were examined in a related CVD investigation of solar cells from the PRC (the "Solar I

PRC programs"), about which mandatory respondent Changzhou Trina Solar Energy Co.,

Ltd. and its affiliate Trina Solar (Changzhou) Science & Technology Co., Ltd. (collectively

"Trina Solar") provided information in its questionnaire response, and (ii) twenty-seven

additional governmental grants and a tax deduction received by Trina Solar during the

period of investigation ("POI"), which Commerce discovered in the course of the agency's

verification procedures (the "verification programs").  See Final Decision Memo at 16–17,

84–88; Trina Solar Final Calc. Memo at 7–10; Verification of the Questionnaire Resps.

Submitted by [Trina Solar] and its Cross-Owned Companies, at 7, CD 354, bar code

3232621-01 (Oct. 2, 2014).  Trina Solar provided information regarding the Solar I PRC

programs, specifically the "names of the grant programs, the amounts received, and brief

explanations of their understanding of the purpose of the program."  Final Decision Memo

at 84.  However the Government of China ("GOC") refused to provide any information

about the Solar I PRC and verification programs, in response to both the standard

questionnaire requesting information related to any additional assistance provided by the

---

[1] On July 7, 2015, Defendant submitted indices to the public and confidential administrative records for this CVD investigation, which identify the documents that comprise the records to Commerce's final determination.  These indices are located on the docket at ECF No. 36.  All further references to documents from the administrative records are identified by the numbers assigned by Commerce in these indices, unless otherwise specified.

GOC, directly or indirectly, to exporters or producers of solar products, and in a subsequent questionnaire specifically requesting information related to these programs. Id. at 16, 84–85.  Upon discovery of the verification programs, Commerce sought an explanation as to why Trina Solar had not previously reported this additional assistance, to which "counsel for Trina Solar stated that the company reported all of the assistance for which it was asked."  Id. at 16, 86.

Commerce determined to investigate both the Solar I PRC programs and the verification programs as discovered apparent subsidies pursuant to section 775 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677d (2012).[2]  See Final Decision Memo at 16–19, 85–86.  Commerce determined that the use of adverse facts available ("AFA")[3] was warranted with regard to the Solar I PRC programs and the verification programs because the GOC had failed to cooperate by withholding the information requested regarding the Solar I PRC programs, and because Trina Solar had failed to cooperate to the best of its ability by not reporting the verification programs.  Id. at 16–17, 84–88. Invoking AFA, but without identifying specific facts in the record on which the determinations were based, Commerce determined that each of the Solar I PRC programs and verification programs provided a "financial contribution" within the meaning of 19 U.S.C. § 1677(5)(D), conferred a "benefit" within the meaning of 19 U.S.C. § 1677(5)(E), and was "specific" within the meaning of 19 U.S.C. § 1677(5A), and thus

---

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

[3] Although 19 U.S.C. § 1677e(a)–(b) and 19 C.F.R. § 351.308(a)–(c) (2014) each separately provide for the use of facts otherwise available and the subsequent application of adverse inferences to those facts, Commerce sometimes uses the shorthand "adverse facts available" or "AFA" to refer to its use of such facts otherwise available with an adverse inference.  See, e.g., Final Decision Memo at 9–11.

that the programs met the statutory requirements for countervailability. Id. at 16–17, 85–86; see Decision Mem. for the Prelim. Affirmative [CVD] Determination in the [CVD] Investigation of Certain Crystalline Silicon Photovoltaic Products from the [PRC], C-570-011, at 24, (Jun. 2, 2014), available at http://ia.ita.doc.gov/frn/summary/prc/2014-13510-1.pdf (last visited Sept. 5, 2017).  Further, Commerce noted that it applied its standard methodology to calculate the AFA-based subsidy rates assigned to the additional discovered programs. See Final Decision Memo at 10–11, 88.  Additionally, Commerce declined to initiate investigations into the creditworthiness of the mandatory respondents, Trina Solar and Wuxi Suntech Power Co., Ltd. ("Suntech"), concluding that petitioner SolarWorld Americas, Inc.'s ("SolarWorld") requests to initiate such investigations did not amount to "specific allegation[s]" as required by 19 C.F.R. § 351.505(a)(6)(i) (2014)[4] for initiating an investigation into a company's creditworthiness. See id. at 95–96; 19 C.F.R. § 351.505(a)(6)(i).

Plaintiff Trina Solar commenced this action on March 18, 2015 to challenge various aspects of the final determination. See Summons, Mar. 18, 2015, ECF No. 1; Am. Compl., Apr. 17, 2015, ECF No. 11.  On July 1, 2015, the action was consolidated with an action brought by petitioner SolarWorld to challenge different aspects of the final determination. See Order, July 1, 2015, ECF No. 35.  Trina Solar moved for judgment on the agency record, see Trina Solar's Rule 56.2 Mot. J. Agency R., Jan. 19, 2016, ECF No. 50, challenging: 1) Commerce's determination to countervail the Solar I PRC programs and verification programs; 2) Commerce's use of AFA to determine CVD rates for the verification programs; 3) Commerce's determinations that the provisions of

---

[4] Further citations to Title 19 of the Code of Federal Regulations are to the 2014 edition.

Case 1:15-cv-00068-CRK   Document 124   Filed 09/15/17   Page 6 of 27

Consol. Ct. No. 15-00068                                                    Page 6
**PUBLIC VERSION**

aluminum extrusions, solar glass, and polysilicon were countervailable; and 4)

Commerce's determination to include the PRC Export-Import Bank's Export Buyer's

Credit Program in the calculation of Trina Solar's subsidy rate. See Pls.' Mem. L. Supp.

Mot. J. Agency R. 9–33, Jan. 19, 2016, ECF No. 51 ("Trina Solar Br."). Consolidated

Plaintiff SolarWorld also moved for judgment on the agency record, see SolarWorld's Mot.

J. Agency R., Jan. 20, 2016, ECF No. 52, challenging: 1) Commerce's determination that

SolarWorld's uncreditworthiness allegation was insufficient, and the agency's subsequent

resultant failure to investigate the respondents' uncreditworthiness; 2) Commerce's

determination to utilize a one-percent import duty in the benchmark calculation for

polysilicon for less-than-adequate-remuneration subsidy program; and 3) Commerce's

determination to utilize a twelve-percent import duty in the benchmark calculation for solar

glass for less-than-adequate-remuneration subsidy program. See SolarWorld Americas,

Inc.'s Mem. Supp. Rule 56.2 Mot. J. Agency R. 10–26, Jan. 20, 2016, ECF No. 52

("SolarWorld Br.").

On December 30, 2016, the court sustained in part and remanded in part

Commerce's final determination in this CVD investigation.[5] See Changzhou Trina, 40 CIT

at __, 195 F. Supp. 3d at 1358. The court remanded Commerce's determination

---

[5] Of the challenged issues from the final determination, the court sustained: 1) Commerce's determination to examine the Solar I PRC programs and verification programs, Changzhou Trina, 40 CIT at __, 195 F. Supp. 3d at 1342–43; 2) Commerce's determination to use AFA to determine CVD rates for the verification programs, id., 40 CIT at __, 195 F. Supp. 3d at 1346–47; 3) Commerce's determinations that the provisions of aluminum extrusions, solar glass, and polysilicon were specific, id., 40 CIT at __, 195 F. Supp. 3d at 1351–54; 4) Commerce's determination to include the PRC Export-Import Bank's Export Buyer's Credit Program in the calculation of Trina Solar's subsidy rate, id., 40 CIT at __, 195 F. Supp. 3d at 1355; 5) Commerce's determination to utilize a one-percent import duty in the benchmark calculation for polysilicon for less-than-adequate-remuneration subsidy program, id.; and 6) Commerce's determination to utilize a twelve-percent import duty in the benchmark calculation for solar glass for less-than-adequate-remuneration subsidy program. Id.

regarding the countervailability of the <u>Solar I PRC</u> programs and the verification programs.  See <u>id.</u>, 40 CIT at __, 195 F. Supp. 3d at 1347–50.  While finding that Commerce had reasonably resorted to applying AFA to decide whether the elements necessary for the imposition of countervailing duties were met with regard to these programs, <u>id.</u>, 40 CIT at __, 195 F. Supp. 3d at 1343, 1346–47, the court remanded because it determined that Commerce had reached conclusions related to the programs' countervailability without the support of requisite factual findings.[6] <u>Id.</u>, 40 CIT at __, 195 F. Supp. 3d at 1350. The court determined that Commerce had not "indicated the 'facts' (adverse or otherwise) that it has 'select[ed]' in order to make the requisite factual findings with respect to the <u>Solar I PRC</u> programs and the verification grants and tax deduction." <u>Id.</u>, 40 CIT at __, 195 F. Supp. 3d at 1347.  The court held that, when applying AFA, Commerce "must still make the necessary factual findings to satisfy the requirements for countervailability," <u>id.</u>, 40 CIT at __, 195 F. Supp. 3d at 1350, as the statute requires that "Commerce must still point to actual information on the record to make required factual determinations." <u>Id.</u> (citing 19 U.S.C. §§ 1677e(a)–(c)).  The court specified that Commerce may re-open the record if necessary to make the requisite factual findings, and may use facts available on the record with an adverse inference to satisfy the requirements of countervailability.  See <u>id.</u>  Relatedly, the court ordered that, should Commerce continue to find the verification programs countervailable on remand, Commerce must explain how it selected the applicable AFA rates and how that selection

---

[6] The court held that Commerce had reasonably investigated the <u>Solar I PRC</u> programs and the verification programs pursuant to its authority under the statute, 19 U.S.C. § 1677d, and Commerce's regulations, 19 C.F.R. § 351.311, to independently investigate discovered practices. <u>Changzhou Trina</u>, 40 CIT at __, 195 F. Supp. 3d at 1343.

"comports with its stated practice." Id., 40 CIT at __, 195 F. Supp. 3d at 1351.  Finally, the court granted Commerce's request for a remand of its determination that SolarWorld had not established a "reasonable basis to believe or suspect" that Suntech and Trina Solar were uncreditworthy during the POI as alleged by SolarWorld.  Id., 40 CIT at __, 195 F. Supp. 3d at 1357–58.

Commerce filed the Remand Results on May 1, 2017.  "Under respectful protest," Commerce identified information on the record to demonstrate that certain of the Solar I PRC programs and the additional verification programs provided Trina Solar with a financial contribution, conferred a benefit, and were specific within the meaning of 19 U.S.C. §§ 1677(5)(A), (B), (D), and (E), and thus satisfy the elements for a finding of countervailability.[7]  See Remand Results at 13–24.  Commerce provided additional

---

[7] Commerce noted its concerns with the court's remand order:

> [T]he Department is troubled by the implications of the Court's order. When a party categorically refuses to provide information requested by the Department, the record might not contain the necessary factual evidence the Court is now ordering the Department to cite to make its findings on whether a program is countervailable. Indeed, the subsidy programs that the Department examines often have generic names with no available public information, and necessary information regarding financial contribution, specificity, and benefit is often only available through responses to the Department's questionnaires.

Remand Results at 11.  Commerce further noted its concerns that the court's order could "incentivize non-cooperation" on the part of governments providing examined subsidies, noting that the governments themselves

> are typically the only parties that can provide the Department with information on whether a particular subsidy is specific within the meaning of section 771(5A) of the Act. If, for example, a government does not provide the Department with requested information regarding the specificity of a subsidy program, based on the Court's analysis in its Remand Order, the Department might be required to find information that it frequently cannot obtain. Placing the burden on the Department to specify the factual basis for a specificity determination when the government of

(footnote continued)

Case 1:15-cv-00068-CRK   Document 124   Filed 09/15/17   Page 9 of 27

Consol. Ct. No. 15-00068                                                  Page 9
**PUBLIC VERSION**

explanation regarding its methodology for selecting AFA-based subsidy rates for the verification programs.  See id. at 25–30.  Commerce also reevaluated SolarWorld's uncreditworthiness allegations regarding Suntech and Trina Solar, and determined upon review that SolarWorld's allegation met the required threshold to initiate a creditworthiness investigation of Suntech for the years 2010 and 2012 and of Trina Solar for the years 2005 and 2007.  See id. at 31–35; Redetermination Pursuant to Court Remand Regarding the [CVD] Investigation of Certain Silicon Photovoltaic Products from the [PRC]: Initiation of Creditworthiness Investigations, C-570-011, at 2, Remand Public Document 4, bar code 3543495-01 (Feb. 13, 2017) ("Creditworthiness Investigation Initiation Memo").[8]  Following the creditworthiness investigations, Commerce determined that the companies were uncreditworthy in the years investigated.  See Remand Results at 31–35; Creditworthiness Investigation Initiation Memo at 2–3.

On May 31, 2017, Trina Solar submitted comments on the Remand Results.  Pl.'s Comments on Final Results of Redetermination, May 31, 2017, ECF No. 103 ("Trina Solar Remand Comments");  see also Pl.'s Rebuttal Comments on Final Results of Redetermination, July 21, 2017, ECF No. 112.  Trina Solar argues that Commerce has not supported its findings of specificity with facts on the record for any of the subsidy

---

the foreign country under investigation fails to respond to a questionnaire or otherwise cooperate, especially when information is unavailable publicly, rewards the government under investigation not only for a lack of cooperation, but for an overall lack of transparency in the operation of its subsidy programs. Under these circumstances, the limited record should not inure to the benefit of non-cooperating parties.

Id. at 12.

[8] On May 15, 2017, Defendant submitted indices to the public and confidential administrative records for the remand determination in this investigation.  These indices are located on the docket at ECF No. 102.  The Creditworthiness Investigation Initiation Memo is one of these documents.

Case 1:15-cv-00068-CRK   Document 124   Filed 09/15/17   Page 10 of 27

Consol. Ct. No. 15-00068                                              Page 10
**PUBLIC VERSION**

programs at issue and has not supported its findings of a benefit conferred with facts on the record for the remaining 27 verification programs.   <u>See</u> Trina Solar Remand Comments at 4–8.   Trina Solar also argues that SolarWorld failed to provide a specific allegation of respondents' uncreditworthiness, and that Commerce therefore erred in investigating respondents' creditworthiness on remand.   <u>See</u> <u>id.</u> at 8–10.   Defendant responded to the comments on the Remand Results.   <u>See</u> Def.'s Resp. Parties' Comments on the Remand Redetermination 12–21, July 21, 2017, ECF No. 110 ("Def.'s Remand Comments").   SolarWorld submitted comments in support of Commerce's remand determinations regarding the countervailability of and AFA rates selected for the <u>Solar I PRC</u> programs and verification programs, and regarding the uncreditworthiness of Suntech in 2010 and 2012 and Trina Solar in 2005 and 2007.   <u>See</u> Def.-Intervenor SolarWorld Americas, Inc.'s Comments on the U.S. Dep't Commerce's Final Results of Redetermination Pursuant to Court Remand 7–13, May 31, 2017, ECF No. 104 ("SolarWorld Remand Comments").   However, SolarWorld contends that Commerce erred by not initiating a creditworthiness investigation of Trina Solar for 2012, pursuant to SolarWorld's allegation.   <u>Id.</u> at 10–12.

## STANDARD OF REVIEW

The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c) (2012), which grant the court authority to review actions contesting the final determination in an administrative review of a countervailing duty order.   "The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."   19 U.S.C. § 1516a(b)(1)(B)(i).   "The results of a redetermination pursuant to court remand are also

reviewed 'for compliance with the court's remand order.'" <u>Xinjiamei Furniture</u> <u>(Zhangzhou) Co. v. United States</u>, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting <u>Nakornthai Strip Mill Public Co. v. United States</u>, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008)).

## DISCUSSION

### I.  Factual Basis for Finding <u>Solar I PRC</u> Programs and Verification Programs Countervailable

The court remanded for Commerce to identify record facts to support its determinations regarding the countervailability of the <u>Solar I PRC</u> programs and verification programs. <u>Changzhou Trina</u>, 40 CIT at __, 195 F. Supp. 3d at 1350. The court now reviews Commerce's reconsideration on remand of the factual bases for finding, through the application of AFA, that the <u>Solar I PRC</u> programs and verification programs are countervailable subsidies. Under protest, on remand Commerce has made the requisite factual findings for two <u>Solar I PRC</u> programs. For the reasons that follow, Commerce has complied with the court's order in <u>Changzhou Trina</u>, and its determinations regarding the countervailabilty of these programs are sustained.

### A.  The <u>Solar I PRC</u> Programs

On remand Commerce reconsidered the factual basis for finding two <u>Solar I PRC</u> programs, the Funding on Infrastructure 2008 and Infrastructure 2009, countervailable.[9]

---

[9] On remand Commerce clarified that only two of the 40 <u>Solar I PRC</u> programs (a 2008 and a 2009 infrastructure grant) identified by Commerce in the final determination were actually included in Trina Solar's final CVD rate in the investigation. Remand Results at 14. Commerce concluded, originally and on remand, that only these two programs should be allocated during the POI, as the other 38 programs should instead be expensed during the year in which they were received. <u>Id.</u>; <u>see</u> Trina Solar Final Calc. Memo at 7. To determine in which year each program should be

(footnote continued)

Case 1:15-cv-00068-CRK   Document 124   Filed 09/15/17   Page 12 of 27

Consol. Ct. No. 15-00068                                              Page 12
**PUBLIC VERSION**

See Remand Results at 13–15.   Here, Commerce identified facts in Trina Solar's

questionnaire responses on which the agency relied to find, using adverse inferences,

that these programs are specific within the meaning of 19 U.S.C. § 1677(5A) (D)(i).[10]   See

id. at 14–15.   Commerce determined that there was evidence in the questionnaire

responses indicating that Trina Solar had received other grants that were provided only

to "enterprises operating in the [[                              ]] industry."[11]   Id. at 15.

Commerce stated that information in the responses indicated that certain grants were

intended to encourage "[[                              ]]."   Id.  Because those

projects were expressly intended to benefit the solar industry, Commerce determined that

---

expensed, Commerce conducted the "0.5 percent test" pursuant to 19 C.F.R. § 351.524(b)(2),
which provides that Commerce

> divide the amount of the subsidy approved under a given subsidy program in a
> particular year by the relevant sales (e.g., total sales or export sales) for the year
> in which the assistance was provided. If the amount of the subsidy is less than 0.5
> percent of the relevant sales value, the benefit from that subsidy is expensed to
> the year in which it was received, rather than over the average useful life of the
> renewable physical assets used in the production of the subject merchandise.
> From these 40 grant programs, only two of these grants passed the 0.5 percent
> test and were allocated to the POI: (1) Funding on Infrastructure 2008; and (2)
> Infrastructure 2009.

Remand Results at 14.   Although Commerce concluded in the preliminary and final
determinations that the other 38 Solar I PRC programs were also specific and thus
countervailable, Decision Mem. for the Prelim. Affirm. [CVD] Determination in the [CVD]
Investigation of Certain Crystalline Silicon Photovoltaic Products from the [PRC], C-570-011, at
24, PD 267, bar code 3206936-01 (Jun. 2, 2014); Final Decision Memo at 16–17, Commerce
clarified on remand that it would no longer reach a specificity determination in relation to these 38
programs because they were not allocated to the POI and, again, were not included in the CVD
rate in this investigation or on remand.   Remand Results at 14; see Trina Solar Final Calc. Memo
at 7.

[10] Commerce noted that Trina Solar reported that it benefits under these two programs, but that
Trina Solar had reportedly been unaware which government agencies were involved in providing
the program and was unaware of the purpose of the program or of its eligibility criteria.   See
Remand Results at 14–15.

[11] In particular, Commerce noted that the objectives of another of these grant projects was [[

                                                        ]].   Remand Results at 15.

Case 1:15-cv-00068-CRK   Document 124   Filed 09/15/17   Page 13 of 27

Consol. Ct. No. 15-00068                                                      Page 13
**PUBLIC VERSION**

they were limited to enterprises operating in that industry and that the assistance was accordingly specific within the meaning of 19 U.S.C. § 1677(5A)(D)(i).[12]  See id. Commerce relied upon this record information, with an adverse inference, to determine that the two solar infrastructure grants at issue here, Funding on Infrastructure 2008 and Infrastructure 2009, are specific as well.[13]  Id.  This determination is reasonable, as it infers from the fact that other grants were limited to the solar industry that the grants at issue here are also limited to the solar industry.  Lacking sufficient information about these two grants due to noncooperation by the GOC, see id. at 4; Final Decision Memo at 16, 85, and incomplete information provided by Trina, see Remand Results at 14–15, this adverse inference is in accordance with Commerce's authority pursuant to 19 U.S.C. §§ 1677e(a)–(b).  Commerce has complied with the court's order in Changzhou Trina to point to facts on the record on which it relied when applying AFA to determine that the Solar I PRC programs were specific and, thus, countervailable.

Trina Solar argues that on remand Commerce again failed to identify the facts available on the record on which it relied to determine that these two infrastructure programs are specific to the [[                         ]] industry, instead "assum[ing] specificity" from the fact that Trina Solar received other grants "for the purpose of

---

[12] Commerce stated that, "[i]n particular, Trina Solar reported that it received other grants from the [[                                              ]] regarding the [[                                                                              ]] for participating in a [[                                        ]]  The main tasks of this [[          ]] included an [[                                                                         ]]." Remand Results at 15.

[13] Specifically, Commerce found they "were provided to Trina Solar for the [[                                                                                                ]]," that they were limited to enterprises operating in the [[                              ]] industry, and that the grants were accordingly specific within the meaning of section 19 U.S.C. § 1677(5A)(D)(i). Remand Results at 15.

**PUBLIC VERSION**

[[                                          ]]."   Trina Solar Remand Comments at 4–5.

Commerce identified the fact that Trina Solar had benefited from other programs specific

to the solar industry and inferred from that fact, using an inference adverse to Trina Solar,

that the infrastructure grants at issue are specific to the [[                              ]]

industry as well.   Lacking information about these two grants due to noncooperation by

the GOC and due to insufficient information provided by Trina, this adverse inference is

in accordance with Commerce's authority pursuant to 19 U.S.C. § 1677e(a)–(b).   Trina

Solar's argument is essentially a challenge to the use of an inference.   But Commerce

possesses the express statutory authority to apply an inference to facts otherwise

available where, as here, an interested party has not cooperated to the best of its ability

to provide requested information.   See 19 U.S.C. §§ 1677e(a)–(b).

### B.  The Verification Programs

In Changzhou Trina, the court held that Commerce's determinations, based on

AFA, that the 27 unreported assistance programs and one unreported tax deduction

program discovered at verification are countervailable subsidies amounted to "legal

conclusions without the support of requisite factual findings."   Changzhou Trina, 40 CIT

at __, 195 F. Supp. 3d at 1350.   The court ordered that, on remand, Commerce identify

facts in the record to support the determination that each of these programs is specific,

constitutes a financial contribution, and confers a benefit.   Id.   On remand Commerce

notes that it continues to hold the position that "because Trina Solar did not cooperate to

the best of its ability regarding our questions on nonreported subsidies," it was appropriate

for Commerce to determine, through the application of facts available with an adverse

inference, that the verification programs each provide a financial contribution and benefit,

Case 1:15-cv-00068-CRK  Document 124  Filed 09/15/17  Page 15 of 27

Consol. Ct. No. 15-00068                                                    Page 15
**PUBLIC VERSION**

pursuant to the statute.  Remand Results at 16.  Commerce nonetheless examined the

record for particular facts which support its determinations of countervailability.  See id.

The court now reviews this reevaluation.

### 1.  The Tax Deduction Program Discovered at Verification

Regarding the tax deduction program for disabled employees, Commerce was not

able to identify facts to support a determination that the program is de jure specific to

certain enterprises or industries.  Remand Results at 16–17.  Commerce was also unable

to confirm whether the program was de facto specific, emphasizing that the agency lacked

the opportunity to obtain any factual information related to the tax deduction program

because it had been unreported by both the GOC and Trina Solar throughout the

investigation.  Id. at 17.  As the agency could not confirm specificity, Commerce concluded

"under respectful protest" that the tax deduction program is not countervailable and

removed it from Trina Solar's subsidy calculation.  See id. at 16–17.

Commerce emphasizes that its inability to identify facts to support a finding that

the tax deduction program is de facto specific and its subsequent decision under protest

to not countervail the tax deduction program illustrates the way in which respondents and

governments may be incentivized towards noncooperation by the court's prior remand

order.  Remand Results at 17.  Commerce notes that the prospect that a lack of factual

information on the record related to a subsidy program could result in that program's

removal from subsidy calculations may ultimately reward respondents' and governments'

noncooperation with Commerce's requests for information.  Id.  The court acknowledges

Commerce's concern, but notes that it is within Commerce's power to reopen the record

Case 1:15-cv-00068-CRK   Document 124   Filed 09/15/17   Page 16 of 27

Consol. Ct. No. 15-00068                                                   Page 16
**PUBLIC VERSION**

to obtain additional information related to the tax programs.  See Changzhou Trina, 40

CIT at __, 195 F. Supp. 3d at 1350.

Moreover, the court must uphold Congress' statutory perquisites to

countervailability, i.e., a factual finding of specificity, contribution and benefit.  See 19

U.S.C. §§ 1677(5)(D)–(E), (5A).  Where Commerce's efforts to find the requisite factual

information are thwarted by a failure to cooperate, Congress has provided by statute that

Commerce may resort to facts otherwise available, 19 U.S.C. § 1677e(a), and, as a result

of that noncooperation, may apply an adverse inference to those facts.  19 U.S.C. §

1677e(b).  Although many litigants in antidumping and countervailing duty proceedings

refer to these two statutory provisions collectively as "adverse facts available" or "AFA,"

Congress clearly provided for two separate steps, not to be conflated by Commerce or

the Court.  Commerce must first identify facts available.  19 U.S.C. § 1677e(a).  Once

those facts are identified, it is within Commerce's discretion to apply adverse inferences

to those facts.  19 U.S.C. § 1677e(b)(1)(A).  Congress has specifically provided a non-

exhaustive list of sources to which Commerce may look to find the facts to which it may

apply an adverse inference: "(A) the petition, (B) a final determination in the investigation

under this subtitle, (C) any previous review under section 1675 of this title or determination

under section 1675b of this title, or (D) any other information placed on the record."  19

U.S.C. §§ 1677e(b)(2)(A)–(D).  In short, Commerce may not make inferences untethered

to facts in the record.  Commerce therefore reasonably determined, albeit under protest,

that the tax deduction program is not countervailable.

Case 1:15-cv-00068-CRK   Document 124   Filed 09/15/17   Page 17 of 27

Consol. Ct. No. 15-00068                                                    Page 17
**PUBLIC VERSION**

### 2.  The Additional 27 Assistance Programs Discovered at Verification

On remand Commerce also identified the facts on which it relied to determine, through the application of an adverse inference, that the remaining 27 unreported assistance programs discovered at verification are countervailable.  See Remand Results at 17–24.  Regarding the requirements that a countervailable provision of assistance constitute a financial contribution and that the financial contribution confer a benefit, Commerce explained that it relied on the facts that each of the 27 verification programs appeared "in Trina Solar's accounting system under accounts for government assistance" and that there were positive balances in those accounts to conclude, applying an adverse inference, that government funds were dispersed through these assistance programs to Trina Solar.  Id. at 17.  Commerce therefore determined that these programs each constituted a financial contribution that conferred a benefit.  Id. at 17–18.  Pursuant to the statute, the finding of a "benefit conferred" requires a difference in the amount paid for assistance received.  See, e.g., 19 U.S.C. § 1677(5)(E)(ii).  Further, the agency's regulations provide that, "[i]n the case of a grant, a benefit exists in the amount of the grant."  19 C.F.R. § 351.504(a).  Commerce made the reasonable conclusion, based on Trina Solar's account records, and using an adverse inference, that the funds were actually dispersed, thus constituting a financial contribution.  Commerce concluded that a grant with a positive balance provides the recipient with a benefit.  This conclusion is reasonable and consistent with the regulatory definition that a benefit exists in the amount received.  See 19 C.F.R. § 351.504(a).  Trina Solar's argument that Commerce has not demonstrated that, for each of the 27 programs, the government made a financial contribution that conferred a benefit, see Trina Solar Remand Comments at 5–6,

Case 1:15-cv-00068-CRK   Document 124   Filed 09/15/17   Page 18 of 27

Consol. Ct. No. 15-00068                                                    Page 18
**PUBLIC VERSION**

misunderstands "benefit conferred."   Pursuant to the regulations, such a finding can be made if an amount is received.   See 19 C.F.R. § 351.504(a).   Commerce reasonably concluded here, from the positive account balances, that these grants had been received.

Regarding the specificity requirement, Commerce states that the record demonstrates the GOC's "great emphasis" on developing "the renewable energy industry" and the "science and technology industries," highlighting laws, economic measures, and economic incentives on the part of the GOC to promote the development of renewable energy.[14]   See Remand Results at 18–19.   Commerce then provides particular facts on which it based its finding, through the application of facts available with an adverse inference, of specificity for each of the 27 verification grants.[15]   Id. at 20–24; see Def.'s

---

[14] Commerce indicated that the agency has previously relied upon these laws, measures, and incentives to find specificity in prior determinations.   See Remand Results at 18–19.

[15] A summary of these facts includes that: 1) the GOC, including local and provincial governments, has provided subsidization to companies involved "in the PRC's renewable energy and science and technology sectors through its Renewable Energy Law, its various policy catalogues, and through programs such as the Golden Sun Demonstration Project"; 2) the GOC's "National Medium- and Long-Term Program for Science and Technology Development (2006–2020)" policy emphasizes the importance of "strengthening the capacity building of [science and technology] personnel" and states "that funds to implement the [science and technology] outline should be made available through financial means such as state appropriations"; 3) certain grants are limited by law to "enterprises operating in the PRC's renewable energy or science and technology sectors"; 4) the names of certain grants, and the evidence of GOC policy to support companies operating in the science and technology sector, "support a determination that they were provided to Trina Solar because it is an enterprise operating in the PRC's science and technology sector"; 5) certain funding was received from municipal agencies "for various projects related to [[

           ]]"; 6) certain patent grants were provided by agencies operating in the science and technology sector; 7) the names of certain grants indicate that the grants are contingent upon a company's export performance; 8) GOC policy materials indicate that "comprehensive water conservation and the development of technologies for industrial cyclic utilization of water and water efficient production activities" are priority areas for which "state treasury appropriations will be used"; 9) the GOC's laws promote "the development and utilization of renewable energies, such as solar energy" and "arrang[e] for funds to support scientific and technical research for the development of renewable energies"; and 10) the presence of "'key state support for new and high technology fields,'" of which solar energy is one.   See Remand Results at 17–24; Def.'s Remand Comments at 7–9.

**PUBLIC VERSION**

Remand Comments at 7–9.  In light of the particular facts identified by Commerce on which it relied to determine specificity for each grant, the determination that each of these 27 programs is specific is supported by substantial evidence.  Although Trina Solar argues that Commerce has not sufficiently demonstrated that each program is specific, see Trina Solar Remand Comments at 5–8, given the facts identified for each program, Commerce's determination that each of the 27 assistance programs discovered during verification is specific has met the "low bar" for asserting facts in the record which support a finding, based on adverse inferences, of specificity for each program.  See Changzhou Trina, 40 CIT at __, 195 F. Supp. 3d at 1348.

## II.  The Selection of AFA Rates for the Verification Programs

The court deferred determination on Commerce's selection of the AFA-based subsidy rates applied to the verification programs, finding the issue intertwined with the remanded determination that the verification programs are countervailable.  See Changzhou Trina, 40 CIT at __, 195 F. Supp. 3d at 1350–51.  However, the court stated that in the final determination Commerce did not "provide sufficient information to permit the court to judge whether or not the agency's choices here comport with its stated (and undisputed) practice." Id., 40 CIT at __, 195 F. Supp. 3d at 1351.  Accordingly the court stated that, should Commerce determine on remand that the verification programs are countervailable, the agency must explain the method by which it selects the AFA rates ultimately applied to these programs, to ensure that the rate selection is consistent with agency practice.  Id.

Case 1:15-cv-00068-CRK  Document 124  Filed 09/15/17  Page 20 of 27

Consol. Ct. No. 15-00068                                                    Page 20
**PUBLIC VERSION**

On remand Commerce provided an explanation of the AFA rate selection methodology that it applied to the 27 unreported verification programs.[16] See Remand Results at 25–30. Commerce first explained the AFA rate selection hierarchy that the agency applies in an investigation. Id. at 26–29. Pursuant to this methodology:

> (a) [Commerce] first determine[s] whether there is an identical program in the instant investigation and use[s] the highest calculated rate for the identical program (excluding zero rates); (b) if there is no identical program above zero in the instant investigation, [Commerce] then determine[s] if an identical program was used in another CVD proceeding involving the same country, and appl[ies] the highest calculated rate for the identical program (excluding rates that are de minimis); (c) if no identical program exists, [Commerce] then determine[s] if there is a similar/comparable program (based on the treatment of the benefit) in another CVD proceeding involving the same country and appl[ies] the highest calculated rate for the similar/comparable program; (d) where there is no comparable program, [Commerce] appl[ies] the highest calculated rate from any non-company specific program in a CVD case involving the same country, but [does] not use a rate from a program if the industry in the proceeding cannot use that program.

Id. at 27.

Commerce then explained how it applied that hierarchy here. See Remand Results at 29–30. Commerce stated that, because it was unable to identify a non-zero rate calculated for a cooperative respondent for an identical program in the same investigation or an above-de minimis rate calculated for a cooperative respondent for an identical program in any proceeding covering subject merchandise from China, the agency relied upon the highest non-de minimis rate calculated for a similar/comparable program in any proceeding covering subject merchandise from China. Id. Commerce

---

[16] Commerce did not provide such an explanation with respect to the tax deduction program for disabled employees, as the agency determined on remand that the tax deduction program is not countervailable so did not apply an AFA subsidy rate to that program. See Remand Results at 16, 25. Commerce is correct that the redetermination on the tax deduction program renders this issue moot with respect to the tax deduction program.

Case 1:15-cv-00068-CRK   Document 124   Filed 09/15/17   Page 21 of 27

Consol. Ct. No. 15-00068                                                    Page 21
**PUBLIC VERSION**

selected the rate calculated for the "Special Fund for Energy Saving Technology" in the CVD investigation of chlorinated isocyanates from the PRC, and applied that rate here to each of the verification grants. See id. at 29–30; Final Decision Memo at 88. Commerce determined that this program was comparable because it was also a grant program and was provided to a Chinese producer of chlorinated isocyanurates, "based on its energy saving technology renovations." Remand Results at 30. Commerce further explained that, as facts on the record indicate "that Trina Solar is in the PRC's renewable energy industry generally, and in the science and technology sector specifically," and as no facts on the record conflict with that, there is no indication in the record "that the industry in which Trina Solar operates would be ineligible" to receive the grant program on which Commerce relied, awarded to a cooperating respondent in the proceeding covering chlorinated isocyanurates. Id. Although not determining affirmatively that the program is available to producers in the solar panel industry, Commerce provides a reasonable basis for its conclusion that the grant program would be available to producers in the solar industry. See id. Therefore, Commerce has complied with the court's request to provide analysis on remand regarding the AFA hierarchy, and has sufficiently explained "how this 'Special Fund for Energy Saving Technology' relates to each of the [verification] programs at issue" and "whether this program is even available to the solar panel industry." Changzhou Trina, 40 CIT at __, 195 F. Supp. 3d at 1351. Commerce's determinations in this regard on remand are supported by substantial evidence and are sustained.

### III. The Creditworthiness of Suntech and Trina Solar

During the investigation, SolarWorld requested that Commerce find both respondents uncreditworthy during the POI, and argued that Commerce should have

Case 1:15-cv-00068-CRK   Document 124   Filed 09/15/17   Page 22 of 27

Consol. Ct. No. 15-00068                                                    Page 22
**PUBLIC VERSION**

initiated creditworthiness investigations of Suntech for the years 2010 and 2012 and of

Trina Solar for the years 2005, 2007, and 2012.  See Changzhou Trina, 40 CIT at __, 195

F. Supp. 3d at 1357–58; SolarWorld Br. 10–17; Petitioner's Pre-Prelim. Determ.

Comments at 30, PD 260–261, bar codes 3203261-01–02 (May 20, 2014).  In the final

determination, Commerce did not initiate creditworthiness investigations into either

respondent, having determined that SolarWorld did not submit a "specific allegation" to

satisfy the regulatory threshold required to initiate such investigations.  See Final Decision

Memo at 95–96.    Subsequently, Defendant acknowledged that SolarWorld's

creditworthiness allegations did in fact "sufficiently specif[y] the years to which the

allegation pertained," and requested that the court remand the determination not to

investigate SolarWorld's allegations of uncreditworthiness.  Def.'s Resp. Mots. J. Admin.

R. 8–9, Apr. 21, 2016, ECF No. 66.  The court granted Defendant's request to remand.

See Changzhou Trina, 40 CIT at __, 195 F. Supp. 3d at 1357–58.  Trina Solar now

challenges Commerce's decision to initiate creditworthiness investigations on remand.[17]

See Trina Solar Remand Comments at 8–10.  SolarWorld now challenges Commerce's

determination to not initiate a creditworthiness investigation of Trina Solar for 2012.  See

SolarWorld Remand Comments at 10–12.

---

[17] Although the point heading in Trina Solar's comments on remand indicates that Trina Solar challenges both Commerce's determination to initiate the creditworthiness investigations and the ultimate creditworthiness determinations resulting from those investigations, see Trina Solar Remand Comments at 8, Trina Solar in fact only challenges the decision to initiate the creditworthiness investigations.  See id. at 8–10.  It seems that Trina Solar is only challenging the initiation decision because Commerce's findings of uncreditworthiness during 2005 and 2007 are rendered moot by the finding that Trina Solar "did not receive any long-term loans or nonrecurring subsidies in 2005 and 2007 that had benefits allocable to the POI."  See Remand Results at 43; Trina Solar Remand Comments at 8.

Pursuant to the agency's regulations, Commerce will not initiate an investigation into a firm's creditworthiness "absent a specific allegation by the petitioner that is supported by information establishing a reasonable basis to believe or suspect that the firm is uncreditworthy." 19 C.F.R. § 351.505(a)(6)(i). According to Commerce's practice, the agency considers a prior finding of uncreditworthiness, absent an "intervening finding" that the firm is creditworthy, to satisfy the statutory requirement for "a reasonable basis to believe or suspect that the firm is uncreditworthy." See Countervailing Duties, 63 Fed. Reg. 65,348, 65,368 (Dep't Commerce Nov. 25, 1998) (final rule) (citing, and unchanged from, Countervailing Duties, 54 Fed. Reg. 23,366 23,370 (Dep't Commerce May 31, 1989) (notice of proposed rulemaking and request for public comments)).

In the final determination, Commerce did not investigate the creditworthiness of either respondent, having determined that SolarWorld did not submit a "specific allegation," thus not satisfying the regulatory threshold required to initiate an investigation into creditworthiness. See Final Decision Memo at 95–96. Commerce's conclusion that SolarWorld had not submitted a "specific allegation" was based on its finding that SolarWorld did not specify a time period for Commerce to investigate and did not provide information relating to the respondents' ability "to obtain long-term commercial loans," "present and past indicators of either company's financial health," or "future financial position," pursuant to 19 C.F.R. § 351.505(a)(4)(i). Id. at 95.

On remand Commerce reevaluated SolarWorld's allegations of the respondents' uncreditworthiness. See Remand Results at 31–35. Commerce determined that the allegations were specific, and met the regulatory threshold to initiate creditworthiness investigations of Suntech for 2010 and 2012 and Trina Solar for 2005 and 2007. Id. at

Case 1:15-cv-00068-CRK   Document 124   Filed 09/15/17   Page 24 of 27

Consol. Ct. No. 15-00068                                                    Page 24
**PUBLIC VERSION**

31, 44.   Commerce emphasized that, after determining to initiate creditworthiness investigations, the agency provided both mandatory respondents with an "opportunity to provide information regarding their creditworthiness for the years in question," and that both respondents submitted relevant information accordingly.   Id. at 31.   Commerce conducted the investigations and determined that Suntech was uncreditworthy during 2010 and 2012 and that Trina Solar was uncreditworthy during 2005 and 2007.   Id. at 9, 31–35.   Commerce explained that, pursuant to 19 C.F.R. §§ 351.505(a)(4)(i)(A)–(D), it examined the following types of information to investigate the respondents' creditworthiness: receipt by the firm of comparable commercial long-term loans; present and past indicators of the firm's financial health; present and past indicators of the firm's ability to meet its costs and fixed financial obligations with its cash flow; and evidence of the firm's future financial position.   Id. at 31–32, 46–47.

Commerce explained its findings on each factor.   See Remand Results at 32–34. Regarding receipt of long-term loans, Commerce found that neither company received a comparable long-term loan during the investigated years.   Id. at 32.   Regarding present and past indicators of each company's financial health and each company's ability to meet its costs and fixed financial obligations with its cash flow, for Suntech Commerce found that Suntech's current and quick ratios, decreasing cash flows, and increasing debt-to-equity ratios between 2008 and 2012 indicate that the company "struggled to meet its costs and fixed financial obligations with its cash flow, and was required to borrow in order to cover its cash outlays after servicing its long-term debts."   Id. at 33.   For Trina Solar Commerce found that current ratios below the agency's established benchmark, quick ratios below or around the agency's established benchmark, fluctuating cash flows, and

Case 1:15-cv-00068-CRK   Document 124   Filed 09/15/17   Page 25 of 27

Consol. Ct. No. 15-00068                                                    Page 25
**PUBLIC VERSION**

decreasing debt-to-equity ratios.  Id. at 33–34.   Regarding evidence of future financial position, Commerce reported not having "found any evidence indicating Suntech's or Trina Solar's future financial position as viewed during the years in question such as market studies, country and industry economic forecasts, or project and loan appraisals that were prepared prior to loan agreements."   Id. at 34.   Based on these findings, Commerce determined that the respondents were uncreditworthy during the investigated years.  Id. at 34–35.   Based on the determinations of uncreditworthiness, Commerce "adjusted the long-term interest rate benchmarks" assigned for the investigated years and recalculated the CVD rates for both mandatory respondents and all other companies subject to the investigation.  Id. at 35.

On remand, Commerce's determinations to investigate Suntech's creditworthiness for 2010 and 2012, and Trina Solar's creditworthiness for 2005 and 2007, are supported by substantial evidence.   Commerce reasonably relied upon the previous findings of uncreditworthiness to determine that a reasonable basis existed to investigate the companies during those years.   These determinations, which were based on specific information in the record, are supported by substantial evidence.

SolarWorld argues that Commerce erred in not initiating a creditworthiness investigation of Trina Solar for 2012, alleging that "there was significant evidence demonstrating that Trina Solar was uncreditworthy in 2012."   SolarWorld Remand Comments at 10.   Commerce concluded that its prior determinations in the related proceeding Solar I PRC that Trina Solar was uncreditworthy in 2005 and 2007 and Suntech was uncreditworthy during 2010 established the requisite "reasonable basis to believe or suspect" that the respondents were uncreditworthy in those same years for

purposes of this investigation.  Remand Results at 45; see Creditworthiness Investigation

Initiation Memo at 2–3.  Commerce also explained that it determined that the allegation

that Suntech was uncreditworthy during 2012 met the initiation threshold for a "reasonable

basis to believe or suspect" uncreditworthiness because there had been no "intervening

finding" of uncreditworthiness subsequent to Commerce's determination, in the Solar I

PRC proceeding, that Suntech was uncreditworthy in 2010.[18]  See Remand Results at

45; Creditworthiness Investigation Initiation Memo at 2–3.  Commerce explains that it did

not initiate an investigation of Trina Solar for 2012 because of the "intervening finding" of

creditworthiness for Trina Solar in 2008, and because petitioner did not provide sufficient

additional information to satisfy the threshold for a creditworthiness investigation of Trina

Solar for 2012 following that finding.  See Remand Results at 45–46; Creditworthiness

Investigation Initiation Memo at 3; 19 C.F.R. § 351.505(a)(6)(i).  Commerce further

explained that SolarWorld had not supported its allegation with information satisfying any

of the other criteria Commerce considers when determining whether to initiate a

creditworthiness investigation, pursuant to 19 C.F.R. § 351.505(a)(6)(i).  Id. at 47.  This

reasoning is sound.

## CONCLUSION

For the foregoing reasons, the remand determination in the countervailing duty

investigation of certain crystalline silicon photovoltaic products from the People's Republic

---

[18] Commerce explained that this determination was based "on language from the regulatory history of 19 CFR [§] 351.505(a)(6)(i)," as the agency's 1989 Proposed Rulemaking provides that, "where a company has been previously found to be uncreditworthy and there has been 'no intervening finding' of the company's creditworthiness, the prior finding of uncreditworthiness provides a reasonable basis to believe or to suspect that the firm continues to be uncreditworthy." Remand Results at 45.

**PUBLIC VERSION**

of China are found to comply with the court's order in <u>Changzhou Trina</u>, 40 CIT at __, 195

F. Supp. 3d at 1358, and the conclusions are supported by substantial evidence and in

accordance with law.  Judgment will enter accordingly.


                                             _/s/ Claire R. Kelly_
                                            Claire R. Kelly, Judge


Dated: September 8, 2017
          New York, New York